In the Matter of the Judicial Settlement of the Account of VICTORINE WALSH and Another, as Executors of JOHN F. WALSH, Deceased.

Surrogate's Court, Bronx County, January 28, 1926.

Executors and administrators — accounting — profit made from sale of decedent's estate by executor without knowledge of other parties interested belongs to estate — shares in mortgage may be credited to each contestant — attorney's fee of $2,000 not excessive — under Surrogate's Court Act, § 285, widow is entitled to commissions of five per cent upon amount of rent collected from realty and accounted for — items covering charges for services not for benefit of estate disallowed — wills — construction — decedent after giving son cash legacy provided that widow, daughter and grandchildren be paid one-third each from remainder of estate on sale of decedent's property — intent of decedent was not to give widow dower in addition to provisions made for her in will — acceptance by widow of provisions in will precludes claim for dower — widow surcharged for amount of rents withheld — commissions — commissions restricted to statutory amount for collection of rents.

A person occupying a fiduciary position with relation to an estate, as an executor, cannot sell to himself or resell estate property without the knowledge of those interested and thereby make a profit.

Accordingly, in an accounting proceeding in which the report of decedent's executors shows a profit accruing to decedent's widow, one of the executors, upon the sale of estate property without the knowledge of the other parties interested, who now refuse to acquiesce therein, the estate is entitled to whatever profit may have resulted from said sale. Moreover, said contestants should be allowed their shares of the profits by crediting to each a proportionate fractional interest in the bond and mortgage taken upon the sale of the property in which decedent's widow made a profit.

A fee of $2,000 is a fair and reasonable fee for the attorney for the petitioners negotiating said sale.

Under section 285 of the Surrogate's Court Act, the decedent's widow should be allowed a five per cent commission upon the amount of rents collected from her husband's realty and accounted for by her, although she collected rents for a period of time between the death of her husband and the amendment to section 285 by chapter 649 of the Laws of 1923, permitting the commission, since the collection had to be made by someone and it is fair to assume that she was the person to do it, inasmuch as she collected said rents during the lifetime of her husband.

While a claim of the widow for $3,300 should be allowed, items paid for telephone services furnished said widow at her own home, are not proper charges against the estate.  Nor should the fee of the auctioneer for services occasioned by the sale of decedent's property be allowed, since said sale was not made for the benefit of the estate.

Decedent's will by which, after giving a son a cash legacy, he directed that his widow, daughter and grandchildren be paid one-third each from the remainder of his real and personal property, said legacies not to be payable until the real property had been sold and the proceeds realized by his executors, should be construed as disposing of the one-third parts without deducting the dower right of his wife, since full power was given his executors to sell, mortgage, lease or otherwise dispose of the real estate in their discretion.  Consequently the provisions of the will in favor of the widow were intended by the testator to be in lieu of her dower, notwithstanding the fact that the will does not recite that the provisions made for her were in lieu of dower.

Moreover, though said widow possessed an inchoate right of dower in the real estate of her husband, under section 190 of the Real Property Law, which became absolute upon his death, her failure to commence an action for her dower within one year after his death must be deemed an election upon her part to have accepted the provisions of the will and she is, therefore, precluded from claiming dower.

Since the decedent's widow deducted a part of the rents of some of the tenants, kept the same, made false entries in a book as to the amounts thereof and wrongly stated such rents in the account which was filed, she must be surcharged on account thereof.  However, her coexecutor is not chargeable with misconduct with respect to said rents in the absence of knowledge, consent or acquiescence.

No commissions will be allowed herein except for services rendered in collecting the rent from the estate property.

PROCEEDING on judicial settlement of account after objections.

*James A. Beha,* for the executors.

*Max J. Kohler,* for Frank Walsh and Helen Walsh, contestants.

*Joseph P. Fallon,* for Mary Fox, contestant.

*Leon Huhner,* special guardian for Grace Walsh.

*Joseph F. Condon,* special guardian for John Fox.

SCHULZ, S.  Objections to the account of the executors were filed by the special guardians of Grace Walsh and John Fox, infants, and by all of the other persons interested in the residue of the estate of the decedent except his widow who is one of the accounting

parties. Those interposed on behalf of John Fox were dismissed on motion during the hearing.

Pending the submission of the matter, Grace Walsh reached her majority, and thereupon appeared by the same attorney who had been her special guardian and adopted the objections theretofore filed on her behalf. As these objections covered substantially all of the matters embraced in the answers of the other parties, it was agreed that the latter would abide by the determination reached as to them, and they in effect adopted them as their own. The objections were modified and amended during the hearing as hereinafter stated.

A number of objections were withdrawn and as to some others the accountants made certain concessions, in accordance with which they are surcharged with the sum of $3,900, being a balance of rents collected by Victorine Walsh, one of the executors, and not accounted for, and they are disallowed the following items: $90 of the amounts set forth in Schedule " C " as having been paid for janitor supplies; $225 of the amounts alleged in Schedule " C " to have been paid for services as janitor, and $10.85 on account of items referred to in objection fifteen and contained in Schedule " D."

I proceed now to the objections which remain to be determined.

Among the property of the decedent at the time of his death was a parcel of real estate known as No. 543 East One Hundred and Eighty-first street, which the executors arranged to sell at auction. The sale took place on April 24, 1924, and the property was knocked down to one Joseph I. Daly for the sum of $58,200, of which all above a first mortgage of $25,000 was to be paid in cash. The terms of sale provided that the premises were to be sold subject, among other things, " to covenants and restrictions if any of record " and " to any state of facts an accurate survey may show," and the deed was to be ready for delivery on May 24, 1924.

The title did not close on the date set, but subsequently, and on August 11, 1924, a contract was made by Mr. Daly with other purchasers at a price of $67,500, of which $22,500 were to be secured by a bond and second mortgage payable in ten years with installment payments of the principal. The transfer to Daly from the estate and that from Daly took place at the same time.

It is now conceded that in all of these transactions Mr. Daly was acting for the widow of the decedent who is one of the petitioners and accounting executors; that he signed the terms of sale, took the deed to himself, transferred the property to new purchasers and received the consideration all in her behalf. Further, that he has no interest of any kind in the mortgage given as a part of the

purchase price; that he regards it as the property of the executrix mentioned, and that he has executed an assignment in blank and delivered it to one of the executors who now has possession thereof.

It is a well-established principle of law which does not appear to be disputed by the petitioner's counsel, that a person occupying a fiduciary position with relation to an estate, such as this executrix did, cannot sell to herself and resell estate property without the knowledge of those interested, and thereby make a profit. It requires no legal training to perceive that such a transaction is improper; common sense is all that is necessary to a realization of its dangers. The very fact that the executors did not permit the real purchaser's name to appear in the transaction is a strong indication that the legality of the transaction was at least questionable in their minds.

The courts have condemned such practices in many cases of which I content myself to cite but a few. (*Merrick* v. *Waters*, 51 App. Div. 83; affd., 171 N. Y. 655; *People* v. *Open Board of S. B. B. Co.*, 92 id. 98; *Tiffany* v. *Clark*, 58 id. 632; *Boerum* v. *Schenck*, 41 id. 182; *Prentice* v. *Townsend*, 143 App. Div. 151. See, also, the opinion of the referee, former Mr. Justice O'GORMAN in *Gould* v. *Gould*, 126 Misc. 54.)

So far as the evidence discloses, this transaction was carried through without the knowledge of the other parties interested and they refuse to acquiesce therein, and insist that the estate is entitled to whatever profit may have resulted from the transaction. In this contention they are correct. (*Matter of Silkman*, 121 App. Div. 202; affd., 190 N. Y. 560.)

By an amendment made to the objections on the hearing, the contestants ask that their shares of the profit be allowed to them by crediting to each a proportionate fractional interest in such bond and mortgage, whereas the petitioners claim that the present value of the mortgage should be ascertained and they be chargeable therewith. They have introduced evidence which they claim indicates that such value is not much more than the amount contributed in cash by the executrix in question.

A beneficiary, however, may follow a trust fund so long as it can be traced, and may reclaim it in whatever form it has been invested by the trustee, provided the rights of *bona fide* purchasers do not intervene. (*Matter of Leonhard*, 86 Hun, 289; modified, *sub nom. Matter of Brenneman*, 152 N. Y. 645; *Kager* v. *Brenneman*, 47 App. Div. 63; *Pittsburgh-Westmoreland Coal Co.* v. *Kerr*, 220 N. Y. 137, 147; *Mann* v. *Benedict*, 47 App. Div. 173; *Grote* v. *Grote*, 121 id. 841.) There appears to be no good reason why the parties should be compelled to assent to the sale of the second mortgage

at a reduced price, if they are willing to take their share in the profit which is contained in it by accepting assignments of undivided shares therein (*Kager* v. *Brenneman, supra; Holmes* v. *Gilman,* 138 N. Y. 369), and the Surrogate's Court now has jurisdiction to accord the proper relief. (Surrogate's Court Act, §§ 40, 265; *Matter of Watson,* 215 N. Y. 209; *Borrowe* v. *Corbin,* 31 App. Div. 172; affd., 165 N. Y. 634; *Matter of Aldrich,* 194 App. Div. 815.)

There was paid upon the signing of the contract between the executors and Daly the sum of $5,820. The balance due on the closing of the title was $26,292.36, making a total of $32,112.36, which after the deductions of $33.50 for stamps on deed and $20 deposit for keys is accounted for in Schedule " A " of the accounting by two items aggregating $32,058.86. In the transaction between Daly and his grantees there was paid upon the contract $3,000 in cash. The balance of cash due on closing was $15,912.36, making a total of cash of $18,912.36, which after the deductions of $42.50 for stamps on deed and $20 for keys, left the amount of cash realized on this sale the sum of $18,849.86. From this amount the executors paid $1,275 to the broker as his commission for making the sale, leaving a balance of $17,574.86 which is the net amount of cash which should be in their hands as a result of the transfer by Daly to his grantees. As the contestants have disaffirmed the auction sale, the executors will be credited in Schedule A with the sum of $14,484, being the difference between the amount of cash as set forth in that schedule and the balance of cash which they should have as a result of the resale, and they will be surcharged with the full amount of the mortgage and interest and held accountable for all payments of principal and interest made thereon.

I deem the fair and reasonable fee for the attorney in this matter to be $2,000, and accordingly the petitioners will be disallowed the sum of $1,000 of the item of $3,000 set forth in Schedule " C."

The widow, one of the executors, collected the rents of the realty of the decedent and deducted five per cent thereof as her commission for such services. The objection made to the credit in the account was withdrawn in so far as it challenged the authority of the executors to collect rents, but it is urged, nevertheless, that she should not be awarded commission upon the same. The Surrogate's Court Act (§ 285, as amd. by Laws of 1923, chap. 649, in effect Sept. 1, 1923) provides that under certain circumstances, such as are present here, an executor shall be allowed and may retain five per centum of the rents collected from the real estate of a decedent. While the executrix may be subject to criticism for having deducted such five per cent for the time between the

death of her husband and the passage of the amendment stated, as it has been held that commission must be awarded at the rates in effect at the time the decree is made (*Matter of King*, 121 Misc. 530; *Matter of Althause*, 122 id. 279; *Matter of Knight*, 124 id. 430), no harm has been done. The services that she rendered had to be performed by some one, and as she had collected the rents during her husband's life, she was the logical person to continue to do so after his death, and the objection will, therefore, be dismissed, but she will be allowed such commission only upon the amount of rent accounted for by her.

The items paid for telephone service appear to have been for that furnished to the executrix in her own home, and not to the tenants of the real estate of the decedent. The same, therefore, are not proper charges against the estate and will be disallowed to the extent of $200, which it was agreed was the amount thereof.

I shall allow her claim in the sum of $3,300, as I deem the same to have been established by a fair preponderance of the evidence.

As it is evident that the auction sale was not made for the benefit of the estate, it follows that the fee of the auctioneer must be defrayed by the executors personally, and the item is disallowed as a charge against the estate. This being so, it is unnecessary for me to pass upon the question whether the fee paid was exorbitant or not.

The widow of the decedent also claims that she is entitled to dower in the decedent's real property in addition to the provision made for her in his will. This is disputed by the respondents.

My own opinion is that there are very few instances in which men make wills containing provisions in favor of their wives with the intent that they shall also be entitled to dower, and I believe that in most cases the omission to state that the same are in lieu of dower is due to an oversight. There is no question, however, that a widow's right of dower is favored in the law, and the authorities are to the effect that where the will does not state that the provisions for the widow are in lieu of dower, it must appear that the claim for dower is inconsistent with the will and repugnant to its dispositions or some of them, before she can be put to an election. (*Adsit* v. *Adsit*, 2 Johns. Ch. 448, 451; *Lewis* v. *Smith*, 9 N. Y. 502; *Vernon* v. *Vernon*, 53 id. 351; *Konvalinka* v. *Schlegel*, 104 id. 125; *Asche* v. *Asche*, 113 id. 232.)

There being no such statement in the document under consideration, it must be examined to discover, if possible, the intent of the decedent, and whether the provisions are of the character stated and such examination must take in the whole will. (*Matter of Gorden*, 172 N. Y. 25, 28; *Savage* v. *Burnham*, 17 id. 561; *Asche* v. *Asche, supra; Wilson* v. *Wilson*, 120 App. Div. 581.)

Misc. 479]        Surrogate's Court, Bronx County, January, 1926.

The decedent left surviving his widow, a son and a daughter, issue of a prior marriage, and three grandchildren who are children of a deceased son, also the issue of the prior marriage. He made a money bequest of $3,500 to his son to be paid to him " in such manner and in such amounts " as the executors " in their discretion may deem advisable and expedient." He then gave the household furniture, except books and book cases, to his wife, and bequeathed such books and book cases to two grandsons. Thereafter he provided as follows:

" *Fourth*. All the rest, residue and remainder of my property real, personal and mixed and wheresoever situate and of whatsoever nature I give, bequeath and devise as follows:

" One-third thereof to my wife Victorine Walsh absolutely and in fee simple.

" One-third thereof to my daughter Mary Fox absolutely and in fee simple.

" One-third thereof to my grandchildren, Frank Walsh, Grace Walsh and Helen Walsh, children of my deceased son Thomas Walsh, share and share alike. This legacy or the respective shares of my said grandchildren thereunder is to be paid upon each of them arriving at the age of twenty-one years."

He then stated that it was his wish and intention that the legacies provided for are to be paid out of and carved from whatever property, real and personal, which he had and that they are not to be considered payable until such real property has been sold and the proceeds realized, and he vests " full and absolute discretion " in the executors as to the time of sale of such property and directs that they be not required to sell such real property until they deem it advisable. He also gives them full power and authority " to sell, mortgage, *lease* [italics mine] or otherwise dispose of " his real estate, and to deliver all deeds, mortgages, leases, etc., that may be necessary. When the decedent used the word " legacies " he did not have in mind the strict legal definition of that term, but meant also the shares in the real estate, or the proceeds thereof. This is evident from the fact that in referring to the share of the grandchildren, he calls it a " legacy."

It appears from the account that at the time of his death the decedent had about $6,438.39 worth of personal property exclusive of household furniture, books and book cases, and that he owned but one parcel of real estate which consisted of a lot of land with an apartment house upon it.

The scheme of disposal seems clear. He intended to give the one son a cash legacy and to divide the remainder between his wife, his daughter and the children of his deceased son. I do not

Surrogate's Court, Bronx County, January, 1926. [Vol. 126

believe that when he disposed of the one-third parts of the residue of his property, he meant one-third after deducting the dower right of his wife. I think that his intent was as above stated and can be given effect for reasons which did not exist in the case of *Konvalinka* v. *Schlegel* (*supra*) or *Matter of Ellinger* (120 Misc. 276), decided in this court.

It will be noted that the whole scheme of this will leaves the time of distribution to the discretion of the executors, and that under it the executors not only had a power of sale, but that the direction to sell was mandatory because it was necessary to convert the property into money or its equivalent in order to carry out the provisions of the will. Again, the executors must of necessity have control over the property; if not, how could they lease it and deliver leases. The fact that they were given this authority evidences the desire on the part of this decedent to give them the right to collect the rents and to manage the same until they decide to sell and distribute the proceeds. It does not seem reasonable to me to argue that his intention was that they should lease it subject to the widow's dower. While it has been held that a power to sell, alone, is not necessarily inconsistent with a claim for dower, I deem the vesting of discretion in them to hold the sale of the property in abeyance and the right to lease and hence to control the property until sold, as a strong indication that the decedent did not intend that the widow have dower therein. (*Sullivan* v. *Mara*, 43 Barb. 523; *Tobias* v. *Ketchum*, 32 N. Y. 319; *Matter of Foster*, 93 Misc. 400; affd., 174 App. Div. 864; *Matter of Gale*, 83 Misc. 686; *Matter of Fitter*, 92 id. 706; *Matter of Springsteen*, 86 id. 389.)

As a practical matter, it would be very difficult to sell subject to such a right of dower and almost impossible to lease. Certainly, no testator would give his executors the right to sell the real estate at any time in their discretion and to lease and control it, until the sale, and at the same time intend that his wife have a dower right therein without expressly and definitely saying so. Taking all of the provisions with respect to the realty to which I have referred, into consideration, this matter is somewhat like *Matter of Gorden* (*supra*) and *Matter of Lakner* (125 Misc. 654). In the former, it is stated in the opinion that the facts differed from those in *Konvalinka* v. *Schlegel*, in that the executors as trustees had been given control over the realty. (See, also, *Matter of Tailer*, 147 App. Div. 741; affd., 205 N. Y. 599.)

I accordingly conclude that the provisions of the will in favor of the widow were intended by the testator to be in lieu of her dower.

The wife had an inchoate right of dower in the real estate of

her husband. (Real Prop. Law, § 190.) This became absolute upon his death. As I have determined that the provisions made for her in the will of the decedent were in lieu of her dower she was privileged to make an election, but she was not entitled to both the provisions in the will and her dower. (Real Prop. Law, § 200.) She is deemed to have elected, unless within one year after the death of her husband, she enters upon the lands assigned to her for dower or commences an action for dower, and such time may, under certain conditions, be enlarged. (Real Prop. Law, § 201.) The widow not having had lands assigned to her for her dower, and not having entered upon the same, and not having commenced an action for her dower, must be deemed to have accepted the provisions in the will.

One of the accounting executors has waived his right to commissions so that the other, the wife of the decedent, might have them if they were awarded by the court. The latter collected the rents of the decedent's real estate since his death and was accustomed to bring the same to the office of the other executor who deposited them in a bank. Before doing so, she deducted a part of the rents of some of the tenants, kept the same, made false entries in a book as to the amounts thereof and wrongly stated such rents in the account which was filed. Upon the hearing, but only after a number of tenants had testified to the amounts of the rents they had paid and it had been clearly shown that they were in excess of those with which she had charged herself, she agreed through counsel to be surcharged with the sum of $3,900 on account thereof, and she has accordingly been thus surcharged as hereinbefore stated. Her coexecutor is not chargeable with any active misconduct with respect to the rents, as the deductions were made without his knowledge, consent or acquiescence, although a more active supervision of the decedent's real estate by him might have prevented the practice.

Considering the proceedings with reference to the auction sale and the rents, I am satisfied that this is a matter in which no commissions, other than those for services rendered in collecting the rent as heretofore stated, should be allowed (*Matter of Rutledge*, 162 N. Y. 31; *Matter of Gall*, 107 App. Div. 310; *Matter of Welling*, 51 id. 355; *Matter of Fisher*, 124 Misc. 836), and the decree will so provide.

Costs will be allowed to the petitioner for the preparation and filing of the account only. Costs as of a contested accounting will be awarded to the contestants and an allowance made to the special guardian. Costs and allowances payable out of the estate. Settle decision and decree accordingly.