In the Matter of the Judicial Settlement of the Estate of EMMA E. WILLIAMS, Deceased,

Surrogate's Court, Orleans County, December 20, 1928.

*Lewis W. Morse*, for the surviving executor, George C. Poulton.

*Charles R. Kreidler*, for the objector, William H. Poulton.

HARCOURT, S.   Emma E. Williams died on or about the 15th day of February, 1925, leaving a last will and testament by which she bequeathed and devised the use of all of her property to her husband, George V. Williams, during his life, and after his death to remaindermen.   By said will she appointed her husband, George V. Williams, and a brother, George C. Poulton, her executors. The will was duly probated and the executors qualified but the business of the administration of the estate was handled to a large extent, if not entirely, by George C. Poulton.   The husband, George V. Williams, died on the 11th day of March, 1928, and the surviving executor is now presenting his account for settlement.

A construction of the following paragraph of said will has been asked:

" *Second.* To my husband, George V. Williams, I devise and bequeath for his life use all I possess, directing, however, that One Thousand Dollars ($1,000.00) be deposited and allowed to remain in a bank until such time as it may be required to purchase his entrance into The Friendly Home, to provide for his care and maintenance for the balance of his life.   Should his death occur before this maintenance would be necessary, I direct the same amount together with all other property or possessions remaining

or not used at time of his decease to be divided equally between my surviving brothers, or their heirs, or the surviving wives of my three brothers."

The decedent left real and personal property and the question has arisen, under the above provision of the will, as to in whom the property vested after the death of the life tenant. Decedent left her surviving her husband, George V. Williams, and two brothers, the present surviving executor, George C. Poulton, and William H. Poulton, and the widow of a deceased brother, James Poulton. It seems to me that the intention of the testatrix was to leave her property, after the termination of the life estate, in three shares, each represented by a brother, one share to each of the surviving brothers and one share to the heirs, if any, and if not to the widow of the deceased brother. The word " heirs " in this case, in my opinion, means " issue." The deceased brother left no issue, and hence his surviving wife takes his share.

Objections have been filed by William H. Poulton to the account of the surviving executor. Payments of interest were made by the executor upon a mortgage which was an incumbrance upon the real property owned by decedent. Payments of taxes were made by said executor as well as repairs made to said real property, the total sum amounting to $581.51. The general rule is that such payments are to be made by the life tenant. In this case, however, it is conceded that the life tenant had no income. In fact, during the latter portion of his life he lived with one of the brothers, during which time a small amount of money was received from rents of the property but that his only income other than that was a few dollars received from other sources. It is conceded that he was unable to pay the charges of maintaining the real property. There is some evidence to the effect that William H. Poulton knew that these payments were being made and at least acquiesced in the same. As I see it, no one has been injured by these payments. The ordinary rule is that if a life tenant neglects or refuses to pay taxes, interest and to make temporary repairs, the remaindermen may then do so and collect from the life tenant. If these payments had been made by the remaindermen they would be in the same position as they are at present. The only ones interested are the surviving executor, the surviving brother and the widow of the deceased brother, who are all remaindermen. Therefore, I do not see any injustice in allowing these expenditures.

Testatrix owned seventy shares of the capital stock of the Medina Dry Goods Company, a corporation engaged in the dry goods business in the village of Medina, N. Y., with an issued

capital of $30,000, par value $100 per share, and which stock was inventoried at $65 a share. The executor, in his final account, accounts for the sale of this stock at $25 per share. An objection is made to this item of account and it is asked that the executor be surcharged the difference between the inventory value and $25 per share.

Inventory is *prima facie* evidence of the value of stock. (*Matter of Mullon,* 145 N. Y. 98; *Forbes* v. *Halsey,* 26 id. 53.)

The executor testified that the value of the stock of goods was from $27,000 to $30,000 and that the liabilities were from $15,000 to $18,000. This testimony is also borne out by that of the auditor, which is to the same effect. The corporation was a close corporation with no apparent market for its stock. The executor testified as to his efforts to sell the same and that it was finally sold to the then manager of the corporation, for which he gave his note and that upon failing to pay the note the executor purchased the stock himself. The date of the stock certificate issued to the manager was September 15, 1926, and the date of the certificate issued to the executor was September 17, 1926. From all of the facts it is apparent to the court that the inventory value was high. The only evidence upon which to base the value of this stock is the evidence above referred to. If we fix the assets of the corporation at $27,000 and its liabilities at $15,000, the book value of the stock is $40 per share and upon the evidence before the court it seems that this is a fair valuation and is so fixed.

It is a well-established principle of law that a person occupying a fiduciary position with relation to an estate, such as this executor did, cannot sell to himself the property of the estate and that such a transaction is voidable and a fraud in law. (*Matter of Walsh,* 126 Misc. 479; *Johnston* v. *Johnston,* 131 id. 323.)

There is some evidence of acquiescence on the part of William H. Poulton, the objector, but which is denied by him; and it is conceded that the paper containing the consent of the other executor, and an heir at law, was presented to the objector who refused to sign the same.

Under all the circumstances of the case, I find that the burden of proof establishing the acquiescence on the part of the objector has not been sustained.

Sales by an executor to himself of the property of the estate are voidable and the sale may be set aside. In this case the corporation has been dissolved; the stock in question is no longer in existence, and setting aside the sale would be of no avail.

Under these circumstances, the executor should be surcharged with the difference between the value of the stock and the amount

which he received upon the sale. (*Matter of Silkman*, 121 App. Div. 202.)

The objection as to the payment by the executor of the verified claim of the Medina Dry Goods Company as against the decedent is disallowed, as is also the request that the funeral expenses of George V. Williams be paid out of the estate of decedent.

Allowance of $100 is made to the attorney for objector and $62 allowance and disbursements to attorney for executor. The traveling expenses of executor for attendance upon the first two hearings only are allowed.

Prepare decree for signature accordingly.