In the Matter of the Estate of GEORGE W. SHARP, Deceased.*

Surrogate's Court, Kings County, June 9, 1931.

* See, also, 134 Misc. 405.

428

*Alexander Teitler*, for the petitioner.

*Kellogg, Emery & Inness-Brown* [*W. Dickson Cunningham* of counsel], for Dora Cody, Maude Burns and Frank Sharp, objectants.

*Otto Scheilke*, for William Sharp and Maggie S. Eshelman, objectants.

*Thomas E. White*, for Fidelity and Deposit Company of Maryland, surety on administrator's bond.

WINGATE, S. This is a contested accounting by a removed administrator. The representative was duly authorized to manage the real property of the intestate and to collect the rentals therefrom. The account as filed shows that personalty of a value of $1,262.88 came into his hands, and that he collected rentals aggregating $7,525. To this latter sum there must be added $305, representing additional rentals not accounted for, and which the hearing demonstrated he had received. He is, therefore, primarily chargeable in the aggregate sum of $9,092.88.

The claimed credits aggregate $6,795.72, classified as $1,231.86 for funeral and administration expenses and $5,563.86 for general expenses and management of real estate. The questionable items under these classifications fall naturally into two groups: *First,* those for alleged expenses paid by the administrator to himself, on which a surcharge of $35 was made and conceded on the hearing; and, *second,* for payments or claimed credits for commissions both in his general capacity and for management of the real estate. The items claimed on those accounts are, for general commissions, June 5, 1928, $28.58, March 17, 1931, claimed credit balance

$34.56, giving a total of $63.14; and for real estate commissions at five per cent, July 23, 1928, $14.45; October 13, 1928, $37.87; January 18, 1929, $16.75; October 30, 1929, $147.55; March 17, 1931, claimed credit balance, $176.38, giving a total of $393. This latter claim is obviously improper on its face, since the rentals accounted for, plus those not accounted for but shown on the hearing to have been collected, would, at five per cent, warrant only a commission of $391.50, if such commission is allowable at all.

If all the foregoing were given effect, it would show that the administrator was chargeable with $9,092.88 and entitled to credits aggregating $6,759.22, leaving a balance in his hands of $2,333.66. In his account, however, he admits that his only assets aggregate $111.54, showing a devastavit of at least $2,222.12.

It is fundamental that in the ordinary case commissions are not payable until they are allowed by the court (*Beard* v. *Beard*, 140 N. Y. 260, 265; *Matter of Worthington*, 141 id. 9, 11; *Oakeshott* v. *Smith*, 104 App. Div. 384, 388; affd., 185 N. Y. 583), and that, in the discretion of the court, they may be denied where the representative has been guilty of misconduct. (*Matter of Hobson*, 61 Hun, 504, 515; affd., 131 N. Y. 575; *Matter of Rutledge*, 162 id. 31, 34, 35; *Matter of Bushe*, 227 id. 85, 90.)

All decisions on the subject emphasize the superlative degree of good faith required from estate fiduciaries. When, therefore, such duty has been flagrantly and deliberately breached, as was apparently the course pursued in the proceeding at bar, the fiduciary is entitled to no consideration from a court of equitable jurisdiction. Indeed, it would seem to be a dictate of public policy that any discretion possessed by the court should be exercised adversely to such individual, both as a punishment for the acts committed, as well as by way of salutary example to others occupying like positions.

The result of these considerations must lead to a denial of the general commissions, credit for which is claimed in the account in the sum of $63.14.

It is contended on behalf of the removed administrator that the commissions on the rentals stand on a different footing and that these, at least to the extent of $276.65, should be allowed.

The alleged authority for this position is the concluding paragraph of section 285 of the Surrogate's Court Act (as amd. by Laws of 1923, chap. 649), which reads as follows: " Where a trustee or executor is, by the terms of the instrument, required to collect the rents and manage real property, he shall be allowed and may retain, five per centum of the rents collected therefrom, in addition to the commissions herein provided."

Since the representative in the case at bar occupies neither of

the two specified fiduciary positions, and since his collection of the rents was pursuant to authority of the court and not by reason of the terms of the instrument of his appointment, it is obvious that the section does not in terms authorize the relief sought.

It is primary that an administrator as such has no authority over his intestate's realty and that any power acquired by him must be pursuant to order of the court obtained pursuant to the provisions of sections 232 *et seq.* of the Surrogate's Court Act. (*Matter of Engel*, 140 Misc. 276.)

Section 232* reads in part: "An * * * administrator may present a petition to the Surrogate's Court praying for leave to enter into possession of real property left by his decedent and to manage and control the same and receive the rents thereof. * * * The net rents so collected shall be held by the executor or administrator and be brought into court upon the judicial settlement of the account of such executor or administrator and there disposed of as provided in section two hundred and forty-two of this act for the disposition of proceeds of mortgage, lease or sale of real estate."

No express reference is made to rentals in section 242,* it being provided merely that the surrogate shall " make such a disposition of the funds in the hands of the * * * administrator as justice shall require."

So far as the diligence of counsel or the independent research of the court has disclosed, there is no direct authority on the present question although three decisions of the late Surrogate SCHULZ of Bronx county have a certain indirect relation.

In *Matter of Ellinger* (120 Misc. 276) executors, although given no authority over real estate, collected rents therefrom. The learned surrogate said (at p. 278): "As all of the parties acquiesced in the management of the real estate by the executors, and as the latter were acting under the authority of all the parties interested and have without objection accounted for the rents thereof in this proceeding, they should be allowed commissions thereon."

In this case, it may be noted, there is nothing to indicate whether the commissions allowed on the rents were the extra five per cent authorized in the final paragraph of section 285 or whether the sums collected from the real property were merely included with the general income of the estate and the usual executorial commissions allowed on the whole.

*Matter of Walsh* (126 Misc. 479) was also a case pertaining to the actions of executors. The court says (at p. 483): " The widow, one of the executors, collected the rents of the realty of the decedent

---

* Since amd. by Laws of 1929, chap. 229.— [REP.

and deducted five per cent thereof as her commission for such services. The objection made to the credit in the account was withdrawn in so far as it challenged the authority of the executors to collect rents, but it is urged, nevertheless, that she should not be awarded commission upon the same. The Surrogate's Court Act (§ 285, as amd. by Laws of 1923, chap. 649, in effect Sept. 1, 1923) provides that under certain circumstances, such as are present here, an executor shall be allowed and may retain five per centum of the rents collected from the real estate of a decedent  While the executrix may be subject to criticism for having deducted such five per cent for the time between the death of her husband and the passage of the amendment stated, as it has been held that commission must be awarded at the rates in effect at the time the decree is made  *  *  *, no harm has been done. The services that she rendered had to be performed by some one, and as she had collected the rents during her husband's life, she was the logical person to continue to do so after his death, and the objection will, therefore, be dismissed, but she will be allowed such commission only upon the amount of rent accounted for by her."

In *Matter of Schlossman* (136 Misc. 893, 899) the court allowed commissions on rentals to an administratrix where the uncontradicted testimony demonstrated " that the children of the decedent agreed that the administratrix should collect the rents and take care of the real estate," and they were included in the accounting without objection. The court said (at p. 910): " She would have been entitled to employ a real estate broker and pay him for such collection under the circumstances, and hence in my opinion should be compensated for her services."

It does not affirmatively appear what was the rate of commission allowed, or whether the allowance was on the special five per cent basis or merely in the ordinary capacity of administratrix.

As a result, the only remotely pertinent adjudications, construed most favorably to the instant applicant, determine only that an *executor* who, by the terms of the will or consent of parties collected and accounted for the rents of realty of the estate was entitled to commissions thereon and that *some* commissions of an undisclosed nature were once allowed to an administratrix who collected rents pursuant to the consent of all concerned. The first two determinations cannot be held to have any bearing upon the question at bar in view of the express grant of commissions in the statute to an executor performing such a service. In view of the fact that the nature of the commissions allowed the administratrix in the *Schlossman* case is not shown, it cannot be deemed an authority sustaining the present contention that the word " administrator "

should be read into the last paragraph of section 285 of the Surrogate's Court Act.

It is argued on behalf of the administrator that the direction in section 232 that the " *net* rents " should be brought into his accounts is an indication of legislative intention that the word " net " indicates that a deduction from the total rentals received may be made by him.

Since the decision of the Court of Appeals in *Collier* v. *Munn* (41 N. Y. 145) no doubt has been possible that the statutory compensation to representatives is fixed with " the obvious intent to make the sums, called commissions, compensation, not for the service of receiving and paying, but compensation for the whole services *measured* by a *fixed standard* " (p. 147).

Such fixed standard is erected by the Legislature and its fiat, as existing at the time the question arises, is determinative of the total possible allowance. (*Matter of Barker*, 230 N. Y. 364, 372; *Robertson* v. *De Brulatour*, 188 id. 301, 316, 317; *Matter of Healy*, 138 Misc. 462, 463.)

The fixed standard, applicable to the case at bar, is the ordinary compensation given an administrator by the provisions of section 285. This compensation cannot be increased by inference or indirection. It is in full for all services performed by him on behalf of the estate, and the fact that he " may employ other persons to render them, and may allow to such other persons a just compensation therefor " does not justify a payment to him if he performs the services himself. (*Collier* v. *Munn*, 41 N. Y. 143, 145, 148, 149; *Parker* v. *Day*, 155 id. 383, 387, 388; *Matter of Peck*, 79 App. Div. 296, 300; affd., 177 N. Y. 538; *Young* v. *Barker*, 141 App. Div. 801, 808; *Matter of Woods*, 55 Misc. 181, 183.)

The effect of the wording of the final paragraph of section 285 of the Surrogate's Court Act is, in cases where rentals are collected, to discriminate in favor of executors and trustees and against administrators. The court is unable to see any sound basis for such discrimination, but it has been made, and the remedy is legislative and not judicial.

As the court interprets the combined effect of sections 242 and 285, the result is, that rentals properly collected by an administrator are brought into his general accounts, and his sole recompense in respect to them is by reason of the increase in the total assets of the estate forming the basis of computation of his general administrator's commission.

For the reasons hereinbefore stated, the court feels that such general commissions must be denied this accountant in consequence of his gross misconduct. It follows that none of the claimed com-

mission credits can be allowed and the administrator will be charged with total assets of $9,092.88, against which he is credited with proper expenses aggregating $6,304.58, leaving a debit balance of $2,788.30 with which he stands charged.

The final question in the case relates to the compensation of the attorney for the administrator. He has been paid $1,250 and seeks an additional allowance of $3,750. This claim is based upon the unquestionable extent of the services rendered, upon the argument that such fee would amount to about thirty-three and one-third per cent of the estate which it is argued his successful contest of the will made available for the next of kin, and upon the fact that in the transfer tax proceeding this court determined that " the reasonable value of the services rendered and to be rendered by the attorney for the administrator " was $2,600. If this last ground possessed any cogency, it would be a direct determination that the attorney is at this time entitled to no more than $1,350. The correct answer to the contention, however, is that the memorandum of the court on the occasion of such tax appeal meant just what it said, namely, that such determination was " for the purposes of this appeal only."

The percentage argument encounters two difficulties. The first is that there is no adequate showing that the net estate will ever amount to $15,000. This depends almost entirely on the future contingency that the real estate market will improve to a point which will permit of the sale of the real property for approximately $20,000. The second difficulty is that the successful will contest did not serve to vest this interest in the persons presently entitled to distribution. By the terms of the will, they were entitled to half the estate, the other half being given to charity. The result of the contest, therefore, was merely to increase their interests by one-half of the estate. Adopting the applicant's own figures, this would be a benefit of $7,500, one-third of which would amount to $2,500, or a sum presently payable of $1,250.

The true solution of the question, however, lies in no such direction. The elements which are important in the determination of questions of this type are, *first*, the size of the estate; *second*, the labor involved; and *third*, the professional standing of the attorney. Taking all of the presented facts into consideration, the court determines that the fair compensation of the attorney for the administrator is $3,500. Of this sum he has received $1,250. He will, therefore, receive an additional payment of $2,250.

Proceed accordingly.