146

## In re MITTLEMANN.

### No. 37611.

District Court, E. D. New York.

Feb. 20, 1941.

Harry Mesard, of New York City (Walter B. Kempner, of New York City, of counsel), for petitioner for motion.

Krause, Hirsch & Levin, of New York City (George Hirsch, of New York City, of counsel), for Trustee in Bankruptcy.

Sachs & Picket, of New York City, for Louise M. Percival as executrix, etc., for leave to intervene.

Guggenheimer & Untermyer, of New York City, for Betty Crosney as administratrix, etc. of Sam Bernard C. T. A. not opposed.

INCH, District Judge.

In 1933 the New York Title and Mortgage Company encountered financial difficulties. It had guaranteed and issued mortgage certificates in Series Q. The company went through a reorganization and among other things a plan was proposed and adopted for the readjustment, modification or reorganization of all of the holders of the mortgage investments represented by this Series Q. First mortgage certificates, etc. This plan, after some modifications, was approved by the Supreme Court of New York, New York County (Mr. Justice Frankenthaler, January 28, 1935).

The plan, which was before the referee (Trustees' Exhibit 1), provides for the appointment of three trustees who were given the title to and all the rights and powers of owners of the trust estate. Their duties and obligations were carefully set forth and finally it was provided in Article XVII of the Plan and Trust Indenture as follows: "The trustees herein named and their successors in trust, hereby waive the right to statutory commissions and hereby agree that their aggregate annual compensation shall be determined and fixed by the court upon the settlement of their accounts filed pursuant to Article XIV upon the basis of time, effort and accomplishments on the part of each trustee, but in no event shall such aggregate annual compensation exceed 1/4 of 1 percent of the total principal amount of the outstanding Series Q certificates".

Article XIV, above referred to, states that the trustees shall, among other things, file semi-annually an inventory and full and true account of their trust.

It apparently was thought best by the court to make allowances to the trustees semi-annually after they duly accounted, in accordance with Article XIV. The court would then decide what that compensation should be "upon the basis of time, efforts and accomplishments on the part of each trustee" (Article XVII).

The trust approximated $10,000,000 in properties and mortgages at the beginning of the trusteeship of the three trustees. During the succeeding years after the semi-annual accounting and due approval of same by the court the trustees duly applied for allowances and in the case of Mittlemann he was allowed by the court compensation which varied. In some instances he was allowed $4,000, in others $5,300, and in another $3,900. In other words there was no fixed sum to which a trustee could be entitled at the end of a period. Compensation depended upon many circumstances, all of which had to be considered carefully by the court, and while there is no indication here of such action it was possible for the court to award a larger sum to one trustee than to another, according to the facts presented in the accounting, the limit however being that the aggregate sum to all of the trustees could not exceed 1/4 of 1 percent of the total principal amount of the outstanding certificates of the Series.

In accordance with the Plan the trustees had waived any "commission" and agreed to leave their "compensation" to the court. At the hearing before the referee the trustee was allowed to amend his petition and order to show cause by substituting the word "compensation" for the word "commission" which, under the trust indenture, they were not to receive.

Mittlemann was one of these trustees and duly qualified after his appointment on October 24, 1935.

In accordance with the regular procedure and the Plan, Mittlemann and his co-trustees, on or about April 10, 1939, duly filed their semi-annual inventory and account for the period of July 1, 1938 to December 31, 1938 and sought the approval and judicial settlement thereof. They also sought compensations for their work as usual.

Thereafter, on May 5, after due notice, a hearing was held before the court. Decision was reserved by the court on both the matter of approving and judicially settling the account of the trustees, and the question of their compensation for the period in question. By his petition, dated May 4, 1939 (bankrupt's Exhibit 1), Mittlemann applied for "an allowance in such sum as may be fairly compensatory and as may likewise be fair, reasonable and equitable to all parties in interest".

The court naturally did not at once pass upon this petition for allowance nor judicially approve the accounting. Anyone knowing the amount of work that was before the late lamented Mr. Justice Frankenthaler wonders how he accomplished the tremendous amount of work that he did.

The application was made as I have said in May 1939. On September 1, 1939, Mittlemann filed a voluntary petition in bankruptcy and was duly adjudicated that day. No approval of his accounts had been made at that time and no allowance had been granted to him by the court. On September 5, 1939, however, the trustees' accounts were judicially approved and the court then made an allowance to Mittlemann, as such trustee, of $3,750. Not until then could Mittlemann be sure that he would get anything. In fact common experience shows that an appointee of the court, such as Mittlemann was, cannot be sure of compensation until an order to that effect has duly entered and been not appealed from. Such compensation may be reduced or even denied on appeal and, in some rare cases, may be increased.

In making such allowance as this, the court was required by the Plan as well as by the decisions to carefully and fairly consider the "time, efforts and accomplishments on the part of each trustee" aside from first carefully examining the semi-annual report before the judicial approving. This is not a case of earning a salary or wages. It is peculiarly one requiring knowledge and fair appraisal of the value of the services, by the court.

The referee has decided that this allowance, granted to Mittlemann on September 5 or 6 (its date of entry order), 1939, by the State Supreme Court, belongs to the bankrupt estate of Mittlemann who had been duly adjudicated a bankrupt on September 1, 1939, in this court. In his decision of January 8, 1941, the referee decided as follows:

"It is my considered opinion, and I so decide, that on September 1, 1939, the bankrupt was vested with property, to wit: the sum of $3750, within the purview of, and as contemplated by Section 70, 11 U.S. C.A. § 110. I find that on September 1, 1939, the bankrupt had fully earned said sum as his semi-annual, ad interim compensation for the period from July 1, 1938 and ending with December 31, 1938, and it is of no moment, in the instant case, that the award was made after September 1, 1939,

the date of adjudication. As to this compensation and for that period, nothing remained undone or to be done, and the award was only a ministerial act in connection therewith. Fischer v. Liberty National Bank & Trust Co. [2 Cir.], 61 F.2d 757; Glenn on Liquidations, Sec. 318.

"That the alleged assignment of this compensation made by the bankrupt, before fully earned and before December 31, 1938, is void on the ground of public policy".

On January 20, 1941, the referee made findings of facts in accordance with his decision among them being the ones now objected to as follows:

"15. That services rendered by the Bankrupt after December 31, 1938, as one of the Trustees of Series Q, were made and became the subject of the next and succeeding applications for compensation by him.

"16. That as at September 1, 1939, the date of the filing of the voluntary petition in bankruptcy by the Bankrupt herein, all services required of the Bankrupt in order to entitle him to compensation for services rendered by him between July 1, 1938 and December 31, 1938 had been performed".

And the following conclusions of law, also objected to, Nos. 1, 2, 3, 6, and 7 as follows:

"1. That at the time of the filing of the petition in bankruptcy herein, to wit, the 1st day of September, 1939, the compensation of bankrupt, as one of the Trustees of Series Q, for services rendered by the said Bankrupt for the period July 1, 1938 to December 31, 1938, had been duly earned.

"2. That the said compensation of the Bankrupt as one of the Trustees of Series Q, for services rendered by the said Bankrupt for the period July 1, 1938, to December 31, 1938 is an asset of the estate in bankruptcy herein.

"3. That Albert M. Lockhart, as Trustee in Bankruptcy herein is entitled to the said compensation as an asset of the estate in bankruptcy.

"6. That none of the respondents herein has any right in, claim to or lien upon the said compensation, or any part thereof.

"7. That Albert M. Lockhart, as Trustee in Bankruptcy of Armin H. Mittlemann, is entitled to the immediate payment of the aforesaid compensation, now held by the said Trustees of Series Q and their attorney, Thomas Keogh".

The same day (January 20, 1941) the referee made an order now sought to be reviewed carrying out his decision, findings and conclusions.

It is plain therefore that this order of the referee so far as this allowance is concerned is based on the idea that if a reorganization trustee, appointed by the court such as we are considering, does certain work in accordance with his duty, that such performance gives him and his then creditors an immediate property right in any allowance to be granted in the future by the court as compensation therefor prior to the approval of his work and actual granting of an allowance by the court as such compensation. If such a property right exists, and, as the referee decided, the actual granting by the court of compensation is simply a "ministerial act" the referee would be correct and the trustee in bankruptcy of such reorganization trustee-bankrupt would be entitled to this part of the property belonging to the bankrupt. But, in my opinion, this is not the nature of an allowance of compensation such as we are considering.

The bankrupt seeks a reversal of that portion of the order of the referee whereby he directs the sum of $3,750 be paid over to the trustee in bankruptcy and further reversing certain findings of fact and conclusions of law.

The question presented is an interesting one.

The various counsel in the excellent briefs submitted have been unable to present any previous decision of the precise point here raised, but I think there is authority which is helpful. The question is one of law and there is no dispute as to the facts.

 It is well settled that the trustee of bankrupt is entitled to all property at the time of adjudication which Mittlemann, bankrupt, could transfer or which his creditors may reach and that this is to be determined by the law of the State. Mutual Life Insurance Co. v. Abraham I. Menin, 2 Cir., 115 F.2d 975-977. In this case it is the law of the State of New York that must determine the right of the trustee in bankruptcy.

While, as has been said, there is no State decision on this exact point, there are many decisions which indicate that nothing should be paid a trustee until his account had been judicially approved and the amount of compensation fixed and granted by order. Counsel for bankrupt has sub-

 

mitted the following examples: In re Potter, 106 Misc. 113, 175 N.Y.S. 598-600; Pinkiert v. Pinkiert, 258 App.Div. 1081, 18 N.Y.S.2d 44; In re Moore's Estate, Sur., 8 N.Y.S.2d 268-273; In re Phetteplace's Estate, Sur., 6 N.Y.S.2d 845-851; In re Garmes' Estate, 159 Misc. 470, 287 N.Y.S. 52-60; In re Wolfe's Estate, 163 Misc. 351, 297 N.Y.S. 269-271; In re Hammer, 94 Misc. 36, 158 N.Y.S. 981-983; In re Sharp's Estate, 140 Misc. 427, 251 N.Y.S. 15; In re Kirkman's Estate, 143 Misc. 342, 256 N.Y.S. 495-502.

The somewhat similar principle to what we have here was decided in this Circuit. In re Furness, 2 Cir., 75 F.2d 965. See, also, In re Worthington, 141 N.Y. 9, 35 N.E. 929, 23 L.R.A. 97, cited in the Furness case.

Mittlemann as trustee in Series Q, occupied a fiduciary relationship, one of trust, both to the court and to the certificate holders. It seems to me, in the absence of a statute, or a controlling decision of the State Court, that it is contrary to the policy of the State of New York and to such authorities as I can find in this jurisdiction, that such a trustee as Mittlemann was in the reorganization could be said to have a property right in any allowance before his account had been judicially approved and the compensation actually granted.

If this is so it makes no difference whether his accounts were approved and allowance granted a few days or a few months after his adjudication. Of course, in this case, there is not the slightest indication that the approval of the account and the granting of the allowance had anything to do with the unfortunate financial condition of Mittlemann and his prior filing of a petition.

The referee apparently agrees that the attempted assignment by Mittlemann is void but perhaps this was because it was premature. In my opinion it is void entirely.

If I am correct the learned referee is wrong. The hoped for allowance could not be assigned before his account was approved and it was granted nor could the bankrupt transfer it nor his creditors at the time of the adjudication reach it as part of his bankrupt estate. It was something in the future which did not exist until his accounts had been duly approved and the amount of his compensation duly determined by the court. Any other decision would be intolerable in the administration of a reorganization trust.

Accordingly the motion of the bankrupt is granted. Settle order.