(8 App. Div. 8)

### In re MATTHEWSON'S ESTATE.

(Supreme Court, Appellate Division, Fourth Department. June 17, 1896.)

1. EXECUTORS AND ADMINISTRATORS—COMMISSIONS—WHEN DENIED.
      An executrix will not be allowed commissions where it appears that testator bequeathed his estate to her for life, and that she treated it as though it were devised to her absolutely, made no inventory or appraisement, kept no accounts as executrix, and at all times mingled the money of the estate with her own, and made no report of her proceedings as executrix to the surrogate.

2. SAME—COSTS.
      In such case the cost of compelling the executrix to account will not be charged against the estate of her testator, as the proceeding was rendered necessary by her misconduct.

Appeal from surrogate's court, Ontario county.

Application by Mark Matthewson, as administrator with the will annexed of Alfred Matthewson, deceased, to compel an accounting by Frank N. Gunnison, as executor of Laura Matthewson, deceased,

who was the executrix of the will of said Alfred Matthewson, deceased. From the decree entered in the proceeding, petitioner appeals. Modified.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

S. B. McIntyre, for appellant.
T. H. Bennett, for respondent.

GREEN, J. Alfred and Laura Matthewson were husband and wife. Alfred died on or about October 9, 1881, leaving a last will and codicil thereto, wherein, after directing the payment of his debts and funeral expenses, he devised and bequeathed all the rest, residue, and remainder of his estate to his wife, Laura, to have the use, rents, profits, and income thereof during her natural life, and, after her death, unto certain legatees and devisees named therein. The will and codicil were admitted to probate on January 3, 1882, and letters testamentary issued thereon to Laura. Laura Matthewson also made a will, about six months after her husband had made his, the material provisions of which are so like the corresponding provisions of her husband's will as to create a strong presumption of a mutual understanding between them as to the provisions each made for the benefit of the survivor. Laura outlived her husband nine years and six months, and died on the 3d day of April, 1891. By the terms of Laura's will, she appointed the respondent, Frank N. Gunnison, the executor thereof. Her will was never changed, and was duly admitted to probate, and letters duly issued thereon to Gunnison, as executor, on the 20th day of April, 1891. There was no issue of the marriage of Alfred and Laura Matthewson. Mark Matthewson was on May 14, 1891, duly appointed administrator with the will of Alfred Matthewson annexed, and, in the month of September following, instituted this proceeding, by filing his petition in the surrogate's court, praying that the executor of Laura's will be required to render an account of her proceedings as executrix of Alfred's will, and to pay over the remainder to Alfred's representative. Thereupon a citation to show cause was issued by the surrogate, and served upon the executor, returnable October 5, 1891; and, on that day, the executor rendered and filed his account, showing a balance of $1,181 to be turned over to the administrator, subject, however, as claimed in such account, to the deduction of the legal commissions and expenses of the accounting. The balance thus shown consisted of $1,000 in the mortgage of Jacob L. Case, and the remainder in cash. The administrator subsequently filed his objections to the executor's account, and claimed that said account should be surcharged with numerous items. A contest over the account was had before the surrogate, who thereafter made and filed his decree therein.

An examination of the voluminous evidence upon such contest discloses the fact that the main contention was whether the items the administrator claimed should be surcharged upon the accounts of the executor were moneys and property belonging to Alfred or to

Laura.    The surrogate has passed upon such question of fact, and also upon the question of law presented upon the trial, and an examination thereof discloses no reason for interfering with such decision.    We are, however, of the opinion that the trial discloses such a condition of affairs as to preclude Laura, the executrix of Alfred's will, or her representative in her behalf, from claiming commissions.    It appears that Laura treated the estate of Alfred as though devised to her absolutely.    She made no inventory of the estate of which she was executrix.    No appraisal thereof was ever made.    The property to which she, as widow, was entitled, was never set off to her in the manner provided by statute.    She kept no accounts as executrix of said estate.    The moneys and the property of that estate were mingled with her own at all times.    No discrimination or division was made between income and principal.    No report of her proceedings as executrix was ever made to the surrogate.    No account was ever made and filed by her as such executrix. ·By the terms of the will, she was made the trustee, for the benefit of the residuary legatees of the estate coming into her hands as such executrix.    The commissions which her representative now asks should be allowed against the estate of Alfred are for services in the discharge°of her trust.    Commissions are given to representatives as a compensation for their services in protecting the estates of those for whom they are acting as trustees, and the cestuis que trustent are entitled to the performance of such services in the preservation of the estate, in such manner as an ordinarily prudent and careful man would exercise under the like conditions and circumstances.    In this case no such services were performed.    The law provides for the manner in which such a trustee shall act towards the trust estate.    It is the duty of such a trustee, upon the receipt of such an estate represented by him, to make and file in the proper court an inventory of the property coming into the hands of such trustee, so that those who are interested in the estate may, at the very outset of a trusteeship, be able to ascertain what property they are entitled to.    After the making of such an inventory, the trustee should have the property appraised, and such property as the widow, as such, is entitled to, should be set apart by the appraisers.    If these requirements had been fulfilled at the outset of the trusteeship, the character and extent of the property would have been fully disclosed.    It could easily have been ascertained what was principal and what was income, what was the property of the residuary legatees, and upon what property the life tenant was entitled to income.    In the proper discharge of her duties as trustee, an account showing the manner in which she was discharging such trust should have been made by her, and an accounting had before the proper court, that those who were interested in the property might thus be apprised of the manner in which it was being administered by the trustee, and whether the life tenant was using only such moneys as belonged to her under the terms of the will, or whether she was encroaching upon the corpus of the estate, which belonged to the residuary legatees.    None of these things were done by this trustee.    For

more than nine years she treated all of this property as though she was the sole and exclusive owner, and entitled to the whole of the estate. We think that the management of this estate has been prejudicial to the interests of those entitled to the residue and remainder of the estate. We are of the opinion that negligence has been shown by this trustee in caring for the property intrusted to her. These commissions, being for services, should be denied, unless the services have been performed in such a manner as those interested in the residue of the estate had a right to expect. These services have not been so performed, and we think that these parties should not be called upon to pay from this estate the commissions of this trustee. To allow commissions under such circumstances would be countenancing and abetting negligent acts of this trustee in the management of this estate.

The surrogate has also decreed that the allowances, costs, and disbursements of the executor of Laura's estate and of the contestant in this proceeding be paid out of the estate of Alfred. It appears that for more than nine years the trustee failed to keep an account of her disbursements and receipts as trustee, and never filed an account as such, and the remainder-men were in ignorance of the condition of the estate of Alfred during all those years. It appears, further, that for about four months after the appointment and qualification of the executor of Laura's will he neglected to make an account of her trusteeship, and of the condition of the property of Alfred which had come into the hands of Laura, as executrix of his will. After the lapse of that time, the administrator was compelled to, and did, institute proceedings to compel this executor to make and file his account, and to produce and turn over into the proper hands the balance and the remainder of the estate of Alfred. This the administrator had a right to do. Not only that; it was his duty to act promptly and vigorously when he ascertained that the executor was refusing and neglecting to turn over into the hands of the proper representative the trust funds which had been held so many years by the testatrix, Laura. In obedience to a citation of the surrogate's court, and not until then, did the executor render and file his account in pursuance to the order of the surrogate. In that account he showed a balance of $1,181, which was certified and sworn to by him as being the only amount in his hands which the administrator with the will annexed of Alfred Matthewson, deceased, was entitled to. Upon examination, the administrator became convinced that such account did not contain a true statement of the moneys of Alfred Matthewson which had come into the hands of his testatrix; and thereupon he objected to the allowance of such account, and asked that the same be surcharged with certain specified items. There is nothing to show that even then, when the executor had been apprised of the claim of the administrator, did the executor offer to allow or surcharge his account with any of the items or amounts of the moneys alleged by the administrator to belong to him as such, or which should be turned over to him as such administrator. A contest, therefore, became necessary, and was had, and the surrogate finds in his eleventh finding of fact as

follows: "That the surcharge of said contestant allowed amounts to $800.15;" and yet the surrogate has found that the costs and disbursements of these proceedings, made necessary by the negligent conduct of the administratrix of Alfred's will in the first instance, and by the delay and the refusal of her executor to file an account, and voluntarily have a judicial settlement of his accounts, and of the moneys held by him which ought to have been turned over to the representative of Alfred, should be entirely paid out of the estate of Alfred Matthewson. This proceeding, it seems to me, is analogous, upon this question of costs, to an action where the representative of a deceased person is obliged, in carrying out his duties as such representative, to institute an action to compel a delinquent creditor or trustee, who unlawfully withholds trust moneys, to pay over such moneys to such representative. These proceedings were not rendered necessary by any act of this administrator, but they were made necessary by the misconduct and negligence of the executrix and of the executor of the executrix. This plainly appears from the record of these proceedings and the history of these estates, and we can see no reason why this representative, who was acting faithfully in the discharge of his duties, should not be reimbursed for his costs and disbursements out of the estate of one who rendered it necessary that such costs and disbursements should be made.

We are of the opinion that the parts of the decree allowing the executrix commissions, and ordering the same paid out of the estate of Alfred Matthewson, should be reversed, and that the decree should be modified by striking out the provision for commissions therein contained; the decree should be further modified by striking out the provision that the counsel fee, allowances, costs, and disbursements of the executor and of said contestant be paid out of the estate of Alfred Matthewson; and that such decree should be further amended by directing that the costs, allowances, counsel fees, and disbursements of the executor and of the contestant be paid out of the estate of Laura Matthewson; and, as so modified and amended, the decree should be affirmed. The proceedings are remitted to the surrogate of Ontario county for resettlement of the decree in accordance with this recommendation. As each of the parties succeeds in part and fails in part in this appeal, neither is entitled to the costs of this appeal against the other. All concur.