In the Matter of the Judicial Settlement of the Accounts of HARRIET RUTLEDGE, as Executrix of the Last Will and Testament of WALTER HEARD, Deceased.

HARRIET RUTLEDGE, Individually and as Executrix et al., Appellants ; HELEN M. COLLIER, Contestant, Respondent.

EXECUTORS AND ADMINISTRATORS — POWER OF SURROGATE TO DENY COMMISSIONS. A surrogate may, in his discretion, upon the settlement of an executor's accounts, deny him the statutory commissions if he has been guilty of misconduct, as the language of section 2730 of the Code of Civil Procedure, providing that on the settlement of the account of an executor or administrator, the surrogate "*must*" allow to him for his services" the commissions fixed by law, is not necessarily exclusive of all discretion in the surrogate, and its exercise should be left to him upon the facts.

*Matter of Rutledge,* 37 App. Div. 633, affirmed.

(Argued January 23, 1900; decided February 27, 1900.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, made February 3, 1899, affirming a decree of the Surrogate's Court of Ontario county settling the accounts of Harriet Rutledge, as executrix of the last will and testament of Walter Heard, deceased.

The nature of the proceeding and the facts, so far as material, are stated in the opinion.

*Henry M. Field* for Harriet Rutledge, individually and as executrix, appellant. The surrogate erred in refusing to credit executrix with her legal commissions, as fixed by section 2730 of the Code of Civil Procedure. (*Cook* v. *Lowry,* 95 N. Y. 103 ; Story's Eq. Juris. § 1272 ; *Roosevelt* v. *Raphet,* 6 Abb. [N. C.] 447.)

*Frank Rice* for Eliza C. Redhouse, executrix, and others, appellants.

*John Gillette* for Helen M. Collier, contestant, respondent.

GRAY, J. Upon the accounting of this executrix, objections were filed and a hearing had before the surrogate, who rendered his decision with findings of fact and conclusions of law ; upon which a final decree, of the Surrogate's Court for the county of Ontario, was duly entered, which judicially stated and settled the account. Upon appeal, the decision was unanimously affirmed by the Appellate Division, in the fourth department, and appeals were taken by the executrix and by other parties interested in the estate, and in its distribution, to this court.

I think no error has been presented, which, in view of the unanimous affirmance of the decree of the Surrogate's Court, would warrant a reversal of the order and that it should be affirmed. The only question, demanding any consideration by this court, arises upon the exception of the executrix to the surrogate's conclusion that she was not entitled to commissions. There had been the finding of fact that she " did not give proper personal attention to the estate she had in charge, but delegated to her counsel duties which were imposed upon her as such executrix, knowing that he represented conflicting interests." The question is whether a surrogate has the power to withhold commissions upon the facts of the case ; or whether he is without discretion in the matter and must, in all cases, allow commissions at the rate fixed by the statute.

It may be that this question is still open to us ; but I do not think that it can be said that the question of the right to deny

commissions was not deliberately passed upon in *Stevens* v. *Melcher* (152 N. Y. 583). The point was distinctly made by counsel in that case that "the General Term erred in affirming the judgment of the Special Term and referee in refusing to allow commissions to Mrs. Stevens." Mrs. Stevens was the executrix, whose commissions were in question, and it was claimed, in answer to the appellants' point, that, under the facts found by the referee, his conclusion as matter of law that Mrs. Stevens was not entitled to commissions, necessarily, followed. The controversy with respect to commissions was discussed in the opinion; which, after referring to the facts which the referee had found relative to the manner in which Mrs. Stevens had discharged her duties as executrix, held that, upon the findings, the conclusion of the referee should be sustained.

In *Wheelwright* v. *Rhoades*, (28 Hun, 57), which related to the settlement of the accounts of executors, it was said by DAVIS, P. J., delivering the opinion of the General Term, in the first department, that "it is in the power of the surrogate or court to deny all commissions where there has been misconduct on the part of executors, resulting in losses to the estate greater than the lawful compensation. And executors may be personally charged with losses and injuries prejudicial to their trust, and denied commissions altogether, in the sound discretion of the court, in cases deserving great severity of censure."

In *Matter of Curtiss*, (9 App. Div. 285), the Appellate Division, in the second department, affirmed a decree of the surrogate upon his opinion. Surrogate SILKMAN, in that opinion, used this language: " Under the provisions of the code as they exist, there is no power to deny such commissions, *except for misconduct on the part of the executor or trustee.*"

In *Matter of Estate of Harnett*, (15 N. Y. St. Rep. 725), Surrogate RANSOM held that the administratrix should be denied commissions; because she had been grossly delinquent in her administration of the estate.

It is sought to make a distinction between what a court of

equity may do and what the Surrogate's Court, being one of limited jurisdiction, may do with respect to executor's commissions. It is said that while a court of equity, with its general powers and jurisdiction, might withhold commissions, in its discretion; a Surrogate's Court, for .the lack of those powers, is under the strict mandate of the statute. The provision of the statute, which is found in section 2730 of the Code, reads that, " On the settlement of the account of an executor or administrator, the surrogate must allow to him for his services," etc., and it is argued that in that language there is no room for the suggestion that anything is left to the discretion of the surrogate. I do not feel so confident, however, that the language requires of us that we read it with such strictness. , Is there not an implication that services must have been rendered and, further, that the services must have been beneficial to the estate? If no services were rendered and the executor, or administrator, was delinquent in that respect; or if the services were such as were prejudicial to the just and lawful administration of the estate, then, were there such services rendered to the estate, for which the surrogate *must* allow commissions? I doubt it and I doubt if there be any good reason for our making the distinction which is contended for. I cannot think that, where the authority for commissions to an executor, or administrator, depends upon one statutory provision, they may be denied, if the accounting happens to be in a court of equity, and must, under all circumstances, be allowed, if the accounting happens to be in the Surrogate's Court.

I am of the opinion that the language of the statute is not necessarily exclusive of all discretion in the surrogate and that its exercise should be left to him upon the facts; in the review of which by the Appellate Division ample opportunity for correction is afforded. I do not know that there is any public policy involved in this matter and, yet, it seems to me that a better policy is subserved by making the allowance of commissions to executors and administrators to depend upon the faithful rendition of services by them and by giving such a

c̈onstruction to the section of the Code in question, as will vest some discretion in the surrogate upon the subject.

The order appealed from should be affirmed; with costs to all parties appearing in this court by counsel and filing briefs, payable out of the estate.

Parker, Ch. J. (dissenting).   I dissent from so much of the decision declared by the majority of my associates in this case as affirms the order of the surrogate refusing commissions to the executrix, Harriet Rutledge.

As to the other questions I agree that they are put beyond our reach by the unanimous decision of the Appellate Division, by which the findings of fact of the surrogate are made conclusive.

The executrix in this case is a woman without much business experience, and she suddenly found herself placed, by the will of her brother, in charge of an insolvent estate, the situation being complicated by the fact that the testator had received funds, as trustee, and had commingled these funds with his own in the matter of making investments.   It was impossible in some instances to trace the trust fund into securities found in his possession, and to advise and aid her in the execution of the trust she employed an attorney, who seems to have made some serious mistakes — mistakes for which the surrogate has held the executrix responsible.   Not content with that, he concluded further to punish her for having reposed too much confidence in her attorney by imposing upon her a fine in the amount of her commissions.   This he had no power to do.

The statute fixes the compensation to be allowed by the surrogate to executors and administrators absolutely.   It confers no discretion whatever upon that officer, who can neither add to nor take from the amount fixed by the statute. Whether the services performed be little or much matters not, for the statute declares the basis upon which such amount shall be computed.   If the legislature had intended that the surrogates of the state should be vested with the authority to

grant or withhold commissions in their discretion it would have said so, but it did not vest surrogates with any discretion whatever in that direction, and that its action was wise experience teaches and this case illustrates. But whether it was wise or otherwise is of no consequence, for the power was vested in the legislature alone to determine whether commissions should be allowed, and upon what basis, and having allowed commissions in this class of cases its action is conclusive upon the surrogates of this state.

Our attention has been called to some authorities which, it is suggested, show that this court has held that a surrogate can withhold commissions from an executor or administrator as a punishment for negligent conduct. Those authorities hold no such thing, as I shall point out later ; but if they did, it would be the duty of this court to disregard them, for it is the statute, not the decisions, which constitutes the law of this state upon that subject.

Turning to the provisions of the statute, which may now be found in section 2730 of the Code, we read : " On the settlement of the account of an executor or administrator, *the surrogate must allow* to him for his services, and if there be more than one, apportion among them according to the services rendered by them respectively, over and above his or their expenses. For receiving and paying out all sums of money not exceeding one thousand dollars, at the rate of five per centum. For receiving and paying out any additional sums not amounting to more than ten thousand dollars, at the rate of two and one-half per centum. For all sums above eleven thousand dollars at the rate of one per centum. * * * " There is no room for the suggestion that in the language quoted above there is anything left to the discretion of the surrogate. He is commanded to allow the commissions. If the executor squanders any part of the estate, the surrogate must charge him with the diminution ; if he loses a part of it through negligence, the surrogate must charge him with the loss ; if he commingles the funds with his own, the surrogate may charge him with interest computed with annual rests, so that

the estate may be fully protected ; but the surrogate cannot
do more.   He cannot impose fines and penalties because, in
his judgment, the conduct of an executor or administrator
merits it.   The legislature took away from him all oppor-
tunity for doing so by its command that he "must" allow
commissions at a fixed rate.

Now it is true that there have been a few instances where,
in defiance of the statute, commissions to which an executor
or administrator were entitled have been disallowed by surro-
gates who doubtless thought they had the power so to do.

But whatever may have been decided in Surrogate's Court
there are no decisions in this court holding that a surrogate pos-
sesses the power to withhold the commissions of an executor or
administrator, either because he thinks the services were not
worth the amount fixed by the statute or because the executor
was advised wrongly by his attorney.

My attention has been called to several cases in this court
in which the question of commissions of trustees has received
consideration, namely, *Cook* v. *Lowry* (95 N. Y. 103) ; *Lay-
tin* v. *Davidson* (Ib. 263); *Matter of Petition of Allen*
(96 N. Y. 327), and *Stevens* v. *Melcher* (152 N. Y. 551).
Every one of those cases presented the question whether com-
missions should be allowed to trustees and in each of them
the original decree was not by a surrogate, but by the Supreme
Court on its equity side.   In *Laytin's* case appellant's coun-
sel contended that the statute did authorize the fixing of the
rate of compensation of testamentary trustees, and it was said
in the opinion that the executors had had a final accounting
and been discharged as such and that the fund had been
exclusively a trust fund under the will, and it was held that
the court had jurisdiction to award commissions to testamen-
tary trustees, thus concurring in an opinion on that subject to
be found in *Matter of Roosevelt* (5 Redfield, 601).   *Cook* v.
*Lowry* was an action for the construction of a will and for an
accounting of the trustee appointed after the discharge of the
executors, and as he had put the *cestui que trust* to great
trouble in determining his rights, the trial court held that the

trustee's commissions could be withheld and that decision was affirmed in this court. The *Matter of Allen* did not involve that question at all; there the testamentary trustee applied to the Supreme Court to be released from the trust and the court concluded not to award him compensation as if he had performed the trust to the end, but instead ordered fixed a sum of money which it determined to be reasonable in view of the labor performed and that order was affirmed in this court, it being held that compensation could not be claimed as of course because that rule applies only where the trust created has been fully executed, that the petitioner applied for his discharge and it being tendered him if he saw fit to accept it he had to do so upon the terms and conditions imposed by the court, one of which was that he should accept a certain sum of money in lieu of fees. *Stevens* v. *Melcher* was an action for an accounting and presented many questions, one of which was whether the trustee, against whom findings of serious misconduct had been made on the trial, might be disallowed commissions in accordance with the conclusion of the trial court based upon such findings, and it was decided that they might be withheld.

As I have already said, in not one of these cases was the statute to which I have referred considered. That statute refers to the commissions of *executors and administrators only* and governs this case, while in the cases considered (*supra*) the question related to the compensation of testamentary trustees, for which section 2730 of the Code does not provide. By chapter 115 of the Laws of 1866, trustees were authorized to have their accounts as such trustees finally settled before the surrogate, the act providing a practice the same as where an account is rendered by an executor or administrator, including an appeal from the decree of a surrogate, and it also provides that the surrogate shall allow to the trustee or trustees the same compensation for his or their services by the way of commissions as is allowed by law to executors and administrators. Prior to that time testamentary trustees were liable to account to a court of equity in the

case of a trust expressly created by any last will or testament. (2 R. S. 94, section 66.)    It was this section that was amended by chapter 115, Laws of 1866 (*supra*).    As there was no statute commanding courts of equity to allow any compensation whatever to testamentary trustees that court was not accustomed to allow any compensation down to the enactment of the act of April, 1817, declaring it to be lawful for the Court of Chancery to make a reasonable allowance to executors, administrators and guardians.    Prior to that time executors and administrators, like other trustees, were not allowed anything for their services.    The first case after the passage of the act of 1817 was *Matter of Roberts, a Lunatic* (3 Johns. Ch. 43), in which Chancellor KENT considered the case of a committee of a lunatic as coming within the equity of the statute of 1817, and fixed his compensation.    Later, in *Meacham* v. *Sternes* (9 Paige's Ch. 398), which was a case in which the court was asked to fix the compensation for trustees where the deed creating the trust contained no provision as to their compensation, the chancellor said : " The question, therefore, appears to be presented for the decision of the court, whether such a trustee is entitled to compensation for his services, within the equity of the act of April, 1817, and of the provisions of the Revised Statutes as to the allowances to be made to executors, etc.    *    *    *    It may, therefore, be considered the settled rule, so far as the decision of this court can settle it, that in all cases of trusts of this description, and all other express trusts of a similar nature, where nothing is said in the deed or instrument creating the trust on the subject of compensation to the trustee, for his personal services in the execution of the trust, and where there is no agreement on the subject for a different allowance, that the trustee, upon the settlement of his accounts, will be allowed the same fixed compensation for his services, by way of commissions, as are allowed by law to executors and guardians ; and to be computed in the same manner.    In other words, the court will consider the statutory allowance to executors, administrators and guardians, as the compensation tacitly understood and agreed on by the parties

to all trusts, of a similar nature, where nothing appears to show a different agreement or understanding on the subject of compensation." As the court was not hampered by statute in that regard, it allowed compensation as a matter of justice, but when it came to a case where the trustee had neglected to perform his duty, it withheld compensation. When the legislature came to enact chapter 115 of the Laws of 1866, it recognized this jurisdiction of equity, and did not interfere with the rate of compensation to be allowed by that court in cases where accountings of trustees should be had before it, but simply authorized trustees to account before the surrogate, and commanded the surrogate to allow the same rate of compensation as by statute was allowed to executors and administrators. As originally enacted, the Revised Statutes of 1828 provided that on the settlement of executors or administrators " the surrogate *shall* allow to them for their services," &c., (2 R. S. 93, section 58) (since that time for " shall " has been substituted " must," a word which, to say the least, does not tend to detract from the forcefulness of the command of the statute), and shortly thereafter, in the year 1836, a decree of the surrogate of the county of New York came up for review before the chancellor. One of the questions presented was whether the surrogate had the right to withhold the commissions of an administrator because of his gross misconduct of the administration of the intestate's 'estate. The chancellor said : " The surrogate takes no power by implication; and the direction of the statute is positive that upon the settlement of the account of executors and administrators in a proceeding before him, the surrogate shall allow them certain specified commissions, for their services, over and above their expenses; except in those cases where a specific compensation for such services is allowed by the will of the decedent. (2 R. S. 93.) The appellant, therefore, had the same right to be credited his legal commissions for receiving and paying out the moneys of the estate, as he had to be credited for moneys paid by him for debts and funeral expenses." (*Halsey* v. *Van Amringe*, 6 Paige's Ch. 16.) In *Dakin* v. *Demming* (Id. 95) the chancellor

had before him the same question on an appeal from the decree of the surrogate of the county of Oneida, and he said : "Indeed the statute under which the surrogate supposed he was proceeding to take this account, is imperative that he shall allow the personal representatives such commissions ; and this court has recently decided that the surrogate has no discretion on the subject." (Citing *Halsey* v. *Van Amringe, supra.*)

The statutes and cases cited, together disclose that, prior to 1817, executors, administrators and trustees were not compensated for their services. The act of April 15, 1817, did not fix the rate nor direct the allowance of compensation. Instead, it declared that it should be lawful for the Court of Chancery, in the settlement of the accounts of guardians, executors or administrators, to make a reasonable allowance to them for their services. The chancellor settled the rate of allowance in *Matter of Roberts* (*supra*), and in the same month a general rule, adopting the basis of the *Roberts* case for allowances, was passed for all cases. From that date to this, the legislature has not attempted to interfere with the practice of courts of equity in such cases, and we need not go far afield to find the reason for it. But as we are considering the effect of a statute, we pass that by and note that upon the enactment of the Revised Statutes in 1828, the legislature commanded the surrogates to allow a certain rate of compensation to executors and administrators. It did not provide for the compensation of executors and administrators generally, which would have included accountings in a Court of Chancery as well as before the surrogate, but the direction was to the surrogate, thus again manifesting the legislative policy to be one of non-interference with the jurisdiction of chancery under that head. The Court of Chancery continued to exercise exclusive jurisdiction as to the accounts of trustees of express trusts until 1866, during all of which time it was accustomed to compensate trustees on the same basis as executors and administrators, although it occasionally withheld compensation for misconduct. It is noticeable that the act of 1866 (Chap. 115), following consistently all previous legisla-

tion upon the subject, did not attempt to provide a rate of compensation to testamentary trustees generally, which would have included such accountings in a court of equity, but it commanded the surrogate that in accountings of testamentary trustees before him he should allow to them compensation the same as allowed to executors and administrators.

Enough has already been said to make it clear that the persistent insistence that the decisions to which I have referred require this court now to hold that the statute directing surrogates to allow commissions is to be followed or not in the discretion of the surrogate, is wholly without foundation, and, therefore, those decisions do not embarrass this court in giving to the statute that construction which was given to it almost immediately upon its enactment, a construction required by every rule of statutory construction applicable, and one which does not permit the Surrogate's Court to set at naught the command of its creator, the legislature, that it " must allow " to an executor or administrator the compensation provided in section 2730.

BARTLETT, VANN and CULLEN, JJ., concur with GRAY, J., for affirmance : MARTIN and WERNER, JJ., concur with PARKER, Ch. J.

Order affirmed.