In the Matter of the Estate of MARY C. G. JOHNSON, Deceased.

Surrogate's Court, Monroe County, June 25, 1931.

*Homer Benedict* in person.

*H. D. Buell*, for the respondent.

FEELY, S. Upon the death of the testamentary trustee named in the will of this testator, and to whom letters issued under the hand of this court, each of the two trusts set up under the will were continued by the several appointment of a trust company in one trust, and of this petitioner in the other, under a decree of this court dated July 28, 1930. A final accounting of his trust being now made by the petitioner, who claims full commissions, the sometime beneficiary objected to full commission being paid on the ground that when each of the so-called " substitute trustees " were appointed by this court, an accounting was had of the estate of the deceased trustee, in which this petitioner, his brother, was the attorney, and the decree therein awarded the deceased trustee's estate, in lieu of commissions the sum of $525 as the reasonable compensation of his effort in carrying on during seven years of trusteeship, and there was also allowed petitioner the sum of $750 for settling both trusts and turning the funds over to the respective substitute trustees aforesaid. The respondent herein now urges that petitioner during these eleven ensuing months has had very little to do, his account is simple, though somewhat long; and that he should not be allowed full commissions.

This objection is based on the wording of the statute under which, when the trustee of an express trust dies, the trust estate does not pass to his personal representative, but the Supreme Court undertakes the continued execution of the trust under the hand of its appointee as its agent or officer. (Pers. Prop. Law, § 20, as amd. by Laws of 1911, chap. 217.) This section provides that " the person so appointed * * * shall be entitled to *such* compensation for his services by way of commissions *as may be fixed by any court* which has power to pass upon his final account,

which shall in no case *exceed* that now allowed by law to executors or administrators, besides his just and reasonable expenses in the matter in which he is appointed." The parts italicized are those the respondent stresses. It is urged that this statute be read so as to make the amount discretionary in all cases, within the range of the usual commissions of an executor or administrator, but in proportion to the actual service performed, and not necessarily at full rate in every case. The petitioner argues the case is governed exclusively by section 285 of the Surrogate's Court Act.

Section 20 of the Personal Property Law expresses part of the Supreme Court practice. By specifying the rates paid to executors and administrators, it refers to surrogate practice. In its present form, section 1548 of the Civil Practice Act makes the same rates as those set out in section 285 of the Surrogate's Court Act applicable in Supreme Court practice to all trustees, " Except as otherwise prescribed in regard to a testamentary trustee." This seems another reference to surrogate practice, as no other specific rates for compensating a testamentary trustee have been found elsewhere, or brought to my attention. In surrogate practice the words " testamentary trustee " are now defined (Surr. Ct. Act, § 314, subd. 6) to include every person who is designated by any competent authority to execute a trust created by a will, with some exceptions that do not exclude a " substitute " or " successor trustee " from the class.

While one of these two systems of practice refers to the other, the respective application of them is distinct and separate. The revisers note to the first section in the Civil Practice Act defines the scope of this act, including section 1548 of the Civil Practice Act, as not extending to the field covered by sections 275 to 285 of the Surrogate's Court Act. The latter act contains an express, detailed provision in the same field, at least in so far as testamentary trustees are concerned. This renders section 285 of the Surrogate's Court Act the exclusive rule in Surrogate's Court, under the provisions of section 316 of the Surrogate's Court Act, in all cases where the trustee or successor was appointed by the Surrogate's Court. The latter court might, occasionally, have to compensate a testamentary trustee or his " substitute," appointed by the Supreme Court. (See *Matter of Morgan*, N. Y. L. J. Jan. 13, 1912, cited in Jessup-Redf. § 1155.) Only in such case the respondent's point, that the compensation is variable rather than fixed, would fairly be before this court. It is unnecessary to consider now whether the Supreme Court in such case would follow the surrogate practice; because neither this trustee, nor

his substitute, nor this trust, was ever brought under the hand of the Supreme Court. From the outset, it has been distinctly a surrogate matter. This court, under the power conferred by subdivision 3 of section 40 of the Surrogate's Court Act, made the appointment under the modern and comprehensive provisions of section 168 of the Surrogate's Court Act, which includes any cause of cessation in trusteeship, where section 20 of the Personal Property Law is still limited to that of death of the trustee. Whatever effect be given to the words " may be fixed " in section 20 of the Personal Property Law, the surrogate's rule reads that he " must allow " the rates fixed by the statute exclusively applicable to its action in ordinary cases where its concurrent power has become exclusive, as it has in this particular case. The word " must," however, does not lessen the discretionary power of the surrogate in cases of misconduct. (*Matter of Rutledge*, 162 N. Y. 31.)

As I understand it, this calls for full rates, as a general rule; and for fixed rates rather than variable ones — the only less amount intended — if we assume for the nonce the respondent's argument be correct — has been commonly understood to be either under the " half-commission " rule, established by case law for receiving as distinct from paying out; or under the *quantum meruit* rule, also one of judicial interpretation, in case the representative die before the completion of his duties; or from the recipient's viewpoint, the statutory case of a single full commission apportioned among several representatives according to their respective service, " however slight." (1 Jessup-Redf. § 1160.)

To that general rule, however, there obtained, for a time, what might be called an exception resting in the manner in which the words " receiving and paying out " have also been judicially construed in connection with the prohibition against the representative of a deceased representative exercising any authority in the primary estate, other than to turn it over to its proper custodian, especially, in so far as it consists of trust property, whether principal or income. Following a decision as to property *in custodia legis* under a receivership, it was held that where trust property came into the hands of a so-called " substitute trustee," or those of a representative of a deceased representative, such possessor was to be regarded only as " a finder or casual bailee " who was not entitled to commissions for turning it over to the successor or " substitute trustee." (*Matter of Ingraham*, 60 Misc. 44, at pp. 49, 50; see, also, *Matter of Fisk*, 45 id. 298); and this successor or substitute was then held not " entitled to commissions for receiving so much of the estate for which he is accounting as consists of

funds which came into his possession from the representative of the deceased trustee, as their reception by him is not to be regarded as a *receiving* of such funds within the meaning of section 2802 (now Surr. Ct. Act, §§ 253, 255 and 285), 2730 (now Surr. Ct. Act, § 262) and 3320 (now Civ. Prac. Act, §§ 1547–49 and Surr. Ct. Act, § 286) of the Code of Civil Procedure which prescribes the compensation to be awarded to trustees for their services." (*Matter of Ward*, 112 N. Y. Supp. 763 [1908]; citing *Attorney-General v. Continental L. Ins. Co.*, 32 Hun, 223; affd., 99 N. Y. 674; and *Estate of Haskin*, N. Y. L. J. Dec. 2; 1898; Surr. Dec. 1898, p. 582 This *Ward* case was cited in *Matter of Ingraham* (*supra*); but is no longer a binding authority. Two years later than the decision in the *Ward* case and *Ingraham* case, Surrogate HEATON took the position (*Matter of Silliman*, 67 Misc. 27) that a substitute trustee, appointed by the surrogate, was entitled on her first intermediate accounting to half commissions for receiving the principal of the trust estate from the representatives of the deceased trustee. Holding that *Whitehead* v. *Draper* (132 App. Div. 799) was a Supreme Court substitution, the rule now urged here by this respondent did not apply to a surrogate's appointee. He concluded, under the state of the statutes at that time, which in so far as this case is concerned, is about the same to-day, the receiving commissions should be paid.

Two years later, the Westchester surrogate had the same point raised before him in connection with a question of a stock dividend, and as to commissions he wrote: " The decision in *Matter of Silliman* (67 Misc. 27) sets forth exactly my views in regard to the matter; and the cases therein cited (*Robertson* v. *De Brulatour*, 188 N. Y. 301, 315, and *Olcott* v. *Baldwin*, 190 id. 99) show that it has been carried out before that decision in other cases.

" My attention has been called to the decisions in *Matter of Ward* (112 N. Y. Supp. 763) and *Whithead* v. *Draper* (132 App. Div. 799); but I agree with Judge HEATON that the *Whitehead* case can be distinguished, and as to the other I prefer to follow the case first above mentioned."

This decision, unreported, was affirmed, without opinion, in both the Appellate Division and the Court of Appeals (*Matter of Baldwin*, 74 Misc. 341; affd., 157 App. Div. 897; affd., 209 N. Y. 601), thereby sustaining the rule laid down by the *Silliman* case, and repudiating the *Ward* case.

On the authority of this *Baldwin* case, the same rule was applied to a sole surviving trustee (*Matter of Affleck*, 163 App. Div. 876), and in *Matter of Thomas* (254 N. Y. 292) the trustee whose commissions were challenged unsuccessfully, was one who had been

appointed under the express authorization of the will by the remaining trustees in order to maintain a fixed number in office. It was urged there also that he had done very little upon his appointment. In those cases, obviously, the analogy breaks down between a testamentary appointment and the judicial appointment of a receiver, whose title to the fund is deemed to vest *vi legis* by virtue of the order of receivership. The later decisions, cited above, establish the rule that the ruling as to receivers is not to be applied to the case of a substitute trustee, at least in so far as surrogate practice goes, especially where the surrogate issued the original letters.

The petitioner herein, therefore, is absolutely entitled to full commissions under section 285 of the Surrogate's Court Act for receiving and for paying out and delivering property of the gross value of $22,736.62, or $611.04. This court has no discretion to award him less on the facts of this case. His legal services on the accounting, including this argument, are estimated in the proportion that judicial settlement bears to full liquidation of an estate on the basis of full commissions, and his legal services are found to be, in all, of the reasonable value of $250. He is also entitled to any disbursements, to be taxed.

Let the decree of judicial settlement be framed accordingly and entered.