In the Matter of the Estate of ELIJAH D. TAFT, Deceased.

Surrogate's Court, Kings County, November 10, 1932.

*William H. Good*, for the executor.

*Sidney S. Hodes*, for Ross Watkins Dunbar.

*Abner C. Surpless*, special guardian.

*Monahan McAuliff*, for Mary Donnelly.

WINGATE, S. In its last opinion in this accounting (144 Misc. 896) this court held that, by reason of the actions and derelictions of the accountant, he should be denied commissions, and that the allowance of $250 then granted to his attorney should be deemed in full for all services to the estate to and including the entry of the final decree herein.

The facts upon which this decision was based were that decedent died on March 1, 1915, leaving a will which directed the sale of his property, and that his estate be divided into six equal parts, one of which was erected into a trust for a daughter for life with remainder over. The present accountant qualified as executor on May 28, 1915, and although he sold the major portion of the property by January 15, 1917, with only a single asset remaining, and disposed of this last item on July 1, 1927, he never set up the trust for testator's daughter during her lifetime nor paid her one cent of income (she died on January 20, 1931); during this entire period

of seventeen years he kept all of the funds of the estate in a commercial bank account, substantially unproductive and only proceeded with the settlement of his account after an order on a compulsory petition had been issued against him.

The present application for reargument is predicated on the feeling of the fiduciary that this court has exceeded the bounds of the discretion which it possesses in this denial of commissions and additional costs. Since this, if a fact, is a matter in which the court itself possesses infinitely greater interest than any individual litigant could possibly feel, an examination of the decisions of this State bearing upon the question is desirable.

The basic charter of authority for denial of commissions to a fiduciary by a Surrogate's Court is found in *Matter of Rutledge* (162 N. Y. 31), in which the court says (at p. 34): " I do not know that there is any public policy involved in this matter and, yet, it seems to me that a better policy is subserved by making the allowance of commissions to executors and administrators to depend upon the faithful rendition of services by them and by giving such a construction to the section of the Code in question, as will vest some discretion in the Surrogate upon the subject."

Obviously, as is indicated by the court in another portion of this opinion, the discretion possessed by the surrogate in this regard is a judicial one, subject to correction by the Appellate Division in cases of abuse.

In view of the well-established principle that an appellate court is loath to interfere with an exercise of a discretionary power by a court of first impression unless a plain case of abuse is demonstrated (*Hogan* v. *Franken*, 221 App. Div. 164, 165; *Richard* v. *Nat. Distilling Co.*, 95 N. Y. Supp. 547, not officially reported; *Ginsberg* v. *Borenstein*, 126 id. 549, not officially reported; *Matter of Town of Schaghticoke* v. *Fitchburg R. R. Co.*, 53 App. Div. 16, 18; affd., 169 N. Y. 609), a judge at *nisi prius* owes an especial duty of extreme care to mete out exact justice in a case where the exercise of discretionary powers is involved. The distaste which appellate courts feel in interfering with an exercise of discretion by a surrogate in such matters is shown by the fact that a careful analysis of decisions in this State, made by the court in this connection, indicates that in only seven instances have such determinations been altered on appeal.

In an effort to ascertain the correct dividing line between conduct which will warrant a denial of commissions and that which does not justify such a course, an analysis of pertinent decisions has been made by the court. This indicates that in all cases in which a denial of commissions has been refused, the good faith of the

fiduciary has been demonstrated, and there has been an absence of conduct savoring of extreme carelessness or neglect of duty. In other words, although the conduct of the fiduciary may have been such as to entail loss to the estate, for which he was surcharged, his error was one which did not involve either intentional dereliction or wanton disregard of the rights of persons primarily interested in the assets in his charge. The specific instances of such conduct not deemed sufficient to justify a denial involved an error of judgment in failing to institute action on a note (*Matter of Baker*, 72 App. Div. 211; affd., 172 N. Y. 617; *Meacham* v. *Sternes*, 9 Paige, 404), failure to collect rents (*Matter of Smith*, 123 Misc. 69, 72), and omission to pay a questioned debt due the estate from himself (*Matter of Brintnall*, 40 Misc. 67, 70). So, also, erroneous payments of estate assets in good faith have been considered insufficient ground for denial (*Ellis* v. *Kelsey*, 241 N. Y. 374, 381; *Wheelwright* v. *Rhoades*, 28 Hun, 57, 60), as have investments in legally unauthorized securities (*Morgan* v. *Morgan*, 4 Dem. 353, 356; *Gillespie* v. *Brooks*, 2 Redf. 349, 368) and the omission to change non-legal into authorized investments (*Matter of Mount*, 2 Redf. 405). Other instances where the conduct of the fiduciary has not been deemed such as to call for a deprivation of the statutory recompense are a failure to apply for a will construction and resulting continued retention of assets under a dry trust in the honest though mistaken belief that it was an active one (*Matter of Ingersoll*, 95 App. Div. 211, 212); improper make up of accounts where no misconduct or dereliction was demonstrated (*Matter of Dutcher*, 102 App. Div. 410, 412); the act of an ignorant woman in permitting her counsel to manage the estate where no loss was shown (*Matter of Ordway*, 131 App. Div. 339, 340; affd., as to this point, 196 N. Y. 95) and suffering a dishonest co-fiduciary whose embezzlements were made good to conduct the affairs of the estate (*Matter of Dougherty*, 43 Misc. 468).

Turning now to the cases in which commissions have been denied, there is evident a tendency to deny the recompense even though the financial damage to the estate has been repaired by the medium of a surcharge where either positive *mala fides* has been demonstrated or there has been long-continued and striking disregard of fiduciary duties. In these cases it is not surprising to find that two or more causes for complaint against the actions or derelictions of the fiduciary are listed as reasons for the deprivation of remuneration. Obviously a man who will commit one improper act or be guilty of one neglect would, in the natural course of events, perform or suffer others.

Failure to collect assets has on several occasions formed a basis

for denial of commissions, and this occurred in *Matter of Clift* (135 Misc. 417, 418); *Matter of Welling* (51 App. Div. 355) and *Matter of Conklin* (2 Con. Sur. 176).

Deducting unauthorized compensation from the assets of the estate (*Matter of Sharp*, 140 Misc. 427, 429; *Matter of Welling, supra; Matter of Hutkoff*, 124 Misc. 703, 704) and payment of or insistance upon improper personal claims (*Matter of Sharp, supra; Stevens* v. *Melcher*, 152 N. Y. 551, 583) have also been cited as grounds for disallowance.

Deliberately improper investment of estate funds (*Matter of Welling, supra; Matter of Harbeck*, 142 Misc. 57), purchase of securities by the fiduciary from himself (*Matter of Harbeck, supra*), mingling estate funds with his own (*Matter of Wotton*, 59 App. Div. 584, 588; affd., 167 N. Y. 629; *Matter of Harbeck, supra*), deposit by the fiduciary of estate funds in his own name (*Matter of Wotton, supra; Matter of Hutkoff, supra; Matter of Harbeck, supra*), and keeping the estate substantially unproductive for a considerable period (*Matter of Wotton, supra*), have been considered circumstances worthy of note in denials of commissions.

Obviously, on the general principles noted, all deliberate attempts at misappropriation or efforts to reap a personal profit from use of estate funds have met with this justly merited punishment. Among such cases are *Matter of Haines* (139 Misc. 593, 595); *Matter of Gentry* (Id. 759, 774); *Matter of Adams* (51 App. Div. 619; affd., 167 N. Y. 629); *Matter of Hobson* (61 Hun, 504, 515; affd., 131 N. Y. 575); *Cook* v. *Lowry* (95 id. 103, 114); *Matter of Gall* (107 App. Div. 310); *Matter of Scudder* (21 Misc. 179, 188); *Matter of Matthewson* (8 App. Div. 8, 11); *Matter of Rainforth* (40 Misc. 609) and *Matter of Hutkoff* (*supra*). Indeed this particular phase of the subject has been carried to the point of a denial where the fiduciary permitted a diversion by the widow of the decedent although he received no personal benefit therefrom (*Matter of Hayes*, 40 Misc. 500, 504).

Turning from precedents in which absolute or substantial *mala fides* was demonstrated to those which are more properly classifiable as neglect or maladministration of duties, it is found that among reasons assigned for denial of commissions are a failure to keep accounts (*Stevens* v. *Melcher*, 152 N. Y. 551, 583; *Cook* v. *Lowry, supra*) or to keep adequate accounts (*Matter of Hutkoff, supra*), intermingling of principal and interest (*Matter of Welling, supra*) and failure to take proper vouchers for payments (*Stevens* v. *Melcher, supra*).

*Matter of Welling* (*supra*) stressed a failure of the fiduciary to settle his accounts for thirteen years, and inordinate delay

in this regard with consequent expense to beneficiaries were among the grounds upon which the courts based a denial of commissions in *Stevens* v. *Melcher* (*supra*) and *Cook* v. *Lowry* (*supra*), while a failure to make payments to a beneficiary was a prominent basis for like action by the court in *Matter of Wotton* (*supra*).

Actions by the fiduciary causing unnecessary expenses to the estate were enumerated as causes for denial in *Matter of Clift* (*supra*); *Stevens* v. *Melcher* (*supra*); *Matter of Conklin* (*supra*), and *Matter of Hayes* (*supra*), while failure of the fiduciary to give attention to the affairs of the estate and the delegation of his duties to others has been considered a sufficient sole cause for disallowance (*Matter of Rutledge*, 162 N. Y. 31, 34), even though the estate suffered no loss by reason thereof (*Matter of Hartnett*, 15 N. Y. St. Repr. 725, 726).

Finally, any conduct which would of itself warrant the removal of the fiduciary from his position (*Matter of Williamsburgh Trust Co.*, 60 Misc. 296), such as deliberate disregard of the express directions of the court (*Matter of Surpless*, 143 Misc. 48, 60), is alone sufficient to justify a withholding of commissions.

It is the opinion of the court that some, at least, of the misconception of the present executor respecting the proper, applicable law on this subject, is due to a failure to differentiate between conduct which would justify the court in removing him under section 99 of the Surrogate's Court Act, and that which is necessary to permit a denial of commissions. That a real distinction exists is recognized by all courts dealing with the question and is stated with characteristic clarity by Surrogate FOLEY in *Matter of Shenk* (125 Misc. 386), which was an application for revocation of letters. The surrogate says (at p. 390): " The various decisions of the courts construing the sufficiency of the grounds for revocation or removal compel a conclusion that the charges are insufficient to justify revocation of the letters. While the statute appears to require stronger grounds of misconduct to justify a removal, the actions of the respondents, if persisted in, may lead to the denial of commissions to them upon an accounting. Any appearance of self-interest or disregard of their duties as executors should be avoided hereafter by them."

All courts have, on innumerable occasions, stressed the superlative degree of faithfulness demanded of an estate fiduciary in the conduct of the trust reposed in him. While extraordinary business acumen and prophetic vision are not required, he owes a duty of *uberrima fides*. As has been said by the Court of Appeals (*Meinhard* v. *Salmon*, 249 N. Y. 458, 464) in discussing a related question: " Many forms of conduct permissible in a workaday

world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. * * * Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court."

It would be difficult to overstate the moral responsibility of a testamentary fiduciary or the dependence necessarily placed by all concerned upon his diligence and good faith, particularly in estates of modest size. To him the testator looks for aid and protection of those left behind, when death terminates his personal power to care for them. Upon him rely the fatherless and the widow for such alleviation of the loss by inevitable accident as the just and proper distribution of the material resources of the departed can assure. So, whereas miracles may not be required at his hands, he can and should be held to an obligation to perform the duties to the living and the dead which he has voluntarily assumed, with " the punctilio of an honor the most sensitive." In his own affairs he may be diligent or dilatory as his humor suits, but in respect to his fiduciary ties he is held to something stricter than that which he might be inclined to exercise in matters which concern himself alone.

In his argument the executor attempts to exculpate himself for his delay of over a decade and a half by pointing out that it was always possible for the legatees to force him to perform his fiduciary obligations by a compulsory proceeding. In the next breath he complains that their distributive shares were insignificant in amount. The obvious replies to these contentions are that if a person has committed a wrong, its gravity is not mitigated by a delay in bringing him to book for its perpetration, and, in the case at bar, the smallness of the distributive shares of the estate due any particular beneficiary might well have, and no doubt did, deter them from instituting a litigation which, when attendant expenses were paid, might equal or even exceed the total benefit to be derived therefrom.

In the opinion of this court the principle applicable in this decision is clearly stated in *Matter of Matthewson* (8 App. Div. 8, at p. 12): " These commissions, being for services, should be denied, unless the services have been performed in such a manner as those interested in the residue of the estate had a right to expect. These services have not been so performed, and we think that these parties should

not be called upon to pay from this estate the commissions of this trustee. To allow commissions under such circumstances would be countenancing and abetting negligent acts of this trustee in the management of this estate."

No evidence of active *mala fides* on the part of the executor has been demonstrated in this case. In the opinion of the court, however, his inattention to, and disregard of, the essential duties of his office has been so gross as to constitute a substantial equivalent. He was under obligation to sell the property of the estate within a reasonable time, which in the absence of unusual conditions, not here demonstrated, was eighteen months from his qualification in May, 1915. (*Matter of Weston*, 91 N. Y. 502, 511; *Matter of Surpless*, 143 Misc. 48, 52.) This duty was not fully performed by him until twelve years after his appointment. He was under obligation to pay income to testator's daughter on the trust erected for her, continuously from the time of the testator's death. She survived her father for sixteen years and yet this fiduciary, up to the day of her death, never paid her one cent. It was his duty to distribute the estate within a year after his qualification, and although within a short period thereafter the major portion thereof was ready for distribution, he has, to this day, paid nothing whatsoever to any of the persons entitled thereto. It was his duty, pending distribution, to use usual prudent means to make the estate productive of income. He kept it in a commercial bank account, substantially unproductive, for a decade and a half. It was his obligation affirmatively to move for the settlement of his accounts. He has never taken any action in this regard except under the impetus of a compulsory order.

In spite of this serious and persistent disregard of his fiduciary obligations, he seeks to be placed on a par, so far as compensation is concerned, with diligent executors, who have punctually performed every obligation, legal and moral, which was attendent upon the office. In the opinion of this court the language of *Matter of Matthewson*, above quoted, applies with singular aptness to the facts disclosed respecting this applicant, and unless the oft-repeated emphasis of the courts respecting the superlative degree of good faith and diligence required from estate fiduciaries is to degenerate into mere lip-service of a lofty principle, an individual who has been as heedless of his obligations to his trust as the present applicant is entitled to no consideration from a court of equitable jurisdiction. Indeed, it would seem to be a dictate of public policy that any discretion possessed by the court should be exercised adversely to one as derelict in the performance of his duties as this executor, both as a punishment for unfaithful service as well

as by way of salutary example to others occupying like positions, to the end that, as the Court of Appeals indicates in the *Meinhard Case* (*supra*), the level of conduct for fiduciaries shall be kept at the lofty level which the responsibility of their trusts demands.

The question of costs is capable of even more ready disposal. With the allowance made for attorney's services in the former opinion, the latter will have received a total of $395 on a gross estate as of decedent's death of somewhat over $7,000. No condition, not the direct result of the executor's culpable neglect of duty, has been demonstrated which should have made the administration and settlement of the estate other than an ordinary routine matter. It is primary that innocent beneficiaries will not be penalized by a deduction of costs from an estate to cover remuneration to an executor's attorney for services made necessary by the misconduct of the fiduciary. If the executor in the case at bar had attended to his duties as he should have done, the recompense already allowed would have been adequate. The obligation for additional compensation to his attorney is his own and not that of the estate. (*Matter of Smith*, *supra*; *Matter of Gall*, *supra*; *Matter of Harnett*, *supra*; *Matter of Matthewson*, *supra*.)

The rehearing is, therefore, granted and the motion for modification of the decision heretofore made is denied.

Proceed accordingly.