In the Matter of the Estate of ADOLPH HUMPFNER, Deceased.

Surrogate's Court, Montgomery County, May 24, 1937.

*Milburn D. Smith [Wallace H. Sidney* and *Floyd J. Reinhart* of counsel], for the administrator.

*Yetter & Richardson [Harry A. Yetter, Leslie J. Waite* and *A. Howard Burtch* of counsel], for the objectors.

*Newton J. Herrick,* for Helen Humpfner.

*Lawrence D. Wood [Oliver D. Burden* of counsel], for Charles K. Ahearn.

*Ralph H. Kurlbaum,* special guardian.

AULISI, S.  On this motion to confirm the report of the referee, exceptions and objections have been interposed to his conclusions. One of the most important relates to the question of whether the administrator should be allowed his commissions and extra allowance.  The consideration of the arguments on behalf of the administrator requires a somewhat more extended recital of the pertinent facts than might otherwise be necessary.

Adolph Humpfner died intestate on October 12, 1932, a resident of the village of Ames, Montgomery county.  On October 15, 1932, Harry V. Berry of the village of Fort Plain, filed a petition in this court for appointment as temporary administrator and on same date said Harry V. Berry also filed a petition for permanent letters of administration.  Both petitions set forth that he was a creditor and that decedent left no distributees.  An order was granted by this court excusing and relieving the county treasurer from acting as administrator and temporary letters were issued to Harry V. Berry on October 15, 1932.  Thereafter, on December 30, 1932, permanent letters of administration were issued to said Harry V. Berry.

Pending an appeal to the Appellate Division, said Harry V. Berry filed a third petition in this court for temporary letters on February 1, 1933, and again set forth that he was a creditor of the estate and that said decedent left no distributees and petitioner *had no knowledge of any heirs.*  In April, 1933, the administrator went to Germany and upon his return informed this court that he had found two sisters of the decedent, Anna Nusser and Theresa Mueller, in that country and that they had executed powers of attorney to him.  The administrator made a second trip to Germany in November, 1934, although warned by the surrogate in open court that such trip was not necessary.  Upon his return this court relying largely upon the testimony of one Sigmund Hitler granted an order on February 6, 1935, declaring Helen Humpfner, the wife of the decedent, to be dead.  The return and schedules of the transfer tax proceeding filed by Harry V.

Berry on January 21, 1935, shows the amount of the net estate to be $104,204.20. A supplemental account was filed by the administrator on February 4, 1935, and all his accounts were approved and allowed on February 6, 1935, and the administrator directed to pay over the balance of the personal property, amounting to $37,882.02, to the sisters.

On April 8, 1935, receipts and releases of Harry V. Berry as attorney in fact for the sisters acknowledging the receipt of said amount of $37,882.02 were filed with this court. During the same month the administrator informed the surrogate that he had found a safe deposit box in a bank in New York city. He was advised that the contents belonged to the sisters in Germany and that it would also be necessary for him to file a supplemental transfer tax report.

It is fundamental that in the ordinary case commissions are not payable until they are allowed by the court, and that, in the discretion of the court, they may be denied where the representative has been guilty of misconduct. (*Beard* v. *Beard*, 140 N. Y. 260; *Matter of Rutledge*, 162 id. 31; *Matter of Bushe*, 227 id. 85.)

It is also fully established and all courts have repeatedly stated that the fiduciary of an estate is held to a high degree of faithfulness in the conduct of the trust reposed in him. No better statement of the rule can be found than that expressed by Mr. Justice CARDOZO in *Minehard* v. *Salmon* (249 N. Y. 458, 464), viz.: " Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the ' disintegrating erosion ' of particular exceptions (*Wendt* v. *Fisher*, 243 N. Y. 439, 444). Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court."

Obviously, therefore, when such duty has been flagrantly and deliberately breached the fiduciary is entitled to no consideration from a court of equitable jurisdiction. Indeed, it would seem to be a dictate of public policy that any discretion possessed by the court should be exercised adversely to such individual, both as a punishment for the acts committed, as well as by way of salutary example to others occupying like positions. (*Matter of Sharp*, 140 Misc. 427.)

Commissions being for services, should be denied, unless the services have been performed in such a manner as those interested in the residue of the estate had a right to expect. (*Matter of Matthewson*, 8 App. Div. 8.)

I am of the opinion that from the facts disclosed after the administrator had been allowed commissions and discharged and from the evidence produced upon the trial of the objections, that he did not render the services to this estate which the law demands of a fiduciary.

On May 20, 1935, a petition was filed with this court on behalf of the sisters by Charles K. Ahearn and Jean B. Hein, as attorneys in fact. Said petition set forth that the administrator had purchased the interest of the sisters in the estate on November 26, 1934, for the sum of $25,750.80 and charged the administrator with fraud. A substantial portion of this amount had already been advanced to the sisters and Berry had credited himself with the payment thereof in his account.

The administrator had failed to inform the court of the contract existing between him and the sisters.

By an order of this court granted on July 11, 1935, the contract between Harry V. Berry and the sisters was declared null and void and the administrator was directed to file a new account on or before July 29, 1935. On the latter date Harry V. Berry requested additional time to file his account and it is interesting to note that during the same week he informed the surrogate by telephone from New York city that he had found Helen Humpfner, the widow of the decedent, at a beach in Brooklyn.

At a trial of the objections it was shown that Harry V. Berry was not a creditor of the decedent; that on November 14, 1932, he cabled the American Consul in Berlin for information about Humpfner's relatives and that on December 7, 1932, the American Consul at Munich not only sent the administrator the names and addresses of the two sisters but also their birth and baptismal certificates. Although repeated demands were made during the administration of the estate by the sisters for information regarding the value of the estate, we find that Harry V. Berry was evasive in his letters and that he continually painted a dark picture as to the value of the real estate and said little or nothing about the several thousands of dollars which were held in bank accounts. More than two months after Harry V. Berry had bought out the sisters, he filed a supplemental account, February 4, 1935, showing additional savings accounts amounting to about $25,000. These are only some of the many distasteful irregularities disclosed after the administrator had been discharged.

The allowance of commissions being a discretionary power given the surrogate and an analysis of pertinent decisions showing the distaste which appellate courts feel in interfering with an exercise of discretion by a surrogate in such matters, this court has carefully considered the evidence and the briefs submitted by the respective parties.

The administrator contends that commissions and extra allowance should be allowed to him and sets forth the tremendous amount of work which he has done. With this contention I do not agree. Much of the work done could have been eliminated had the administrator proceeded to settle the estate in a lawful and orderly manner. It is difficult to overstate not only the legal but moral responsibility which the administrator owed the sisters in Germany. Not only had they allowed him to continue as administrator, but had given Harry V. Berry a power of attorney. The sisters were more than four thousand miles away and had every right to look to their representative for aid and protection. In my opinion, Harry V. Berry being administrator and attorney in fact owed this estate the highest degree of diligence and good faith. The facts hereinabove stated conclusively show the contrary to be true. It appears to me that the administrator was more interested in finding a method by which to purchase the estate for himself and that he did not act in good faith.

The administrator in his brief at great length attacks Charles K. Ahearn and Jean B. Hein, who are now the attorneys in fact for the sisters. While the methods used by Ahearn and Hein do not meet with the approval or admiration of this court, Harry V. Berry cannot exculpate himself by pointing out that said attorneys in fact " butted in on him." The obvious reply to this is that Harry V. Berry has committed a wrong, its gravity is not mitigated by the actions of Ahearn and Hein. It is the acts of the administrator which are here for decision.

I think that the management of this estate has been prejudicial to the interest of those entitled to the residue and in view of the disregard by the administrator of the rights of the distributees, this court will exercise its discretion to disallow commissions to him.

From another objection it appears that the administrator owns and operates the Harry V. Berry Lumber Company. He has in his employ Mr. E. F. Lamphere. During the administration of this estate the administrator sold to himself lumber in the amount of $760.99. In his account he set forth that the amount for said lumber was paid to Mr. Lamphere. If this were the only error committed by Berry, this court would be inclined to allow the sum

and not surcharge the representative, but in view of all the facts here, the objection must be sustained.

The other objections are gone into in great detail by the referee and it will avail no good to attempt to review them.

I am also of the opinion that upon the evidence taken and exhibits received by the referee the *ex parte* orders of this court granted on December 30, 1932, August 24, 1933, and January 12, 1934, should be opened and the administrator surcharged with the several amounts recommended by the referee.

In conclusion, I, therefore, overrule all the exceptions and objections to the referee's report and confirm same.